**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
| | |
|---|---|
| In re | :         Chapter 11 Case No. |
| | : |
| | :         02-10969 (BRL) |
| FORMICA CORPORATION, et al., | : |
| | : |
| | :         (Jointly Administered) |
| Debtors. | : |
| | : |

------------------------------------------------------------------x


**DEBTORS' SECOND AMENDED AND RESTATED JOINT PLAN OF REORGANIZATION**
**UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**


WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
(212) 310-8000

Attorneys for Debtors and
  Debtors in Possession


Dated:  November 17, 2003

# TABLE OF CONTENTS

**Page**

SECTION 1.      DEFINITIONS AND INTERPRETATION..........................................................1

    A.    Definitions ..................................................................................................................1

        1.1.    Acquisition Agreement ..............................................................................1

        1.2.    Additional Debt..........................................................................................1

        1.3.    Administrative Expense Claim ..................................................................1

        1.4.    Affiliate ....................................................................................................1

        1.5.    Allowed......................................................................................................2

        1.6.    Amended Bylaws .......................................................................................2

        1.7.    Amended Certificate of Incorporation .......................................................2

        1.8.    Approval Order...........................................................................................2

        1.9.    Bankruptcy Code........................................................................................2

        1.10.    Bankruptcy Court .......................................................................................2

        1.11.    Bankruptcy Rules.......................................................................................2

        1.12.    Board of Directors......................................................................................2

        1.13.    Business Day..............................................................................................2

        1.14.    Buyer .........................................................................................................2

        1.15.    Cash...........................................................................................................2

        1.16.    Cerberus ....................................................................................................2

        1.17.    Cerberus Claims ........................................................................................3

        1.18.    Claim .........................................................................................................3

        1.19.    Class ..........................................................................................................3

        1.20.    Collateral...................................................................................................3

        1.21.    Confirmation Date......................................................................................3

        1.22.    Confirmation Hearing ................................................................................3

        1.23.    Confirmation Order....................................................................................3

        1.24.    Convenience Claim ...................................................................................3

        1.25.    Creditors' Committee ................................................................................3

        1.26.    Debtors......................................................................................................3

        1.27.    DIP Agreement..........................................................................................3

        1.28.    DIP Claims ................................................................................................3

        1.29.    Disbursing Agent ......................................................................................3

        1.30.    Disclosure Statement ................................................................................4

| | | |
|---|---|---|
| 1.31. | Disputed | 4 |
| 1.32. | Disputed Unsecured Claims Reserve | 4 |
| 1.33. | Domestic Junior Notes | 4 |
| 1.34. | Effective Date | 4 |
| 1.35. | Eligible Claimant | 5 |
| 1.36. | Equity Interest | 5 |
| 1.37. | Escrow Agent | 5 |
| 1.38. | Escrow Agreement | 5 |
| 1.39. | Excess Cash | 5 |
| 1.40. | Exercising Claimant | 5 |
| 1.41. | Exit Facilities | 5 |
| 1.42. | Final Order | 5 |
| 1.43. | Foreign Junior Notes | 5 |
| 1.44. | Formica | 6 |
| 1.45. | General Unsecured Claim | 6 |
| 1.46. | GUC Distribution Assets | 6 |
| 1.47. | GUC Notes | 6 |
| 1.48. | GUC Notes Indenture | 7 |
| 1.49. | GUC Notes Indenture Trustee | 7 |
| 1.50. | GUC Reduction Ratio | 7 |
| 1.51. | Holdings | 7 |
| 1.52. | Holdings Preferred Equity Interests | 7 |
| 1.53. | Indenture | 7 |
| 1.54. | Indenture Trustee | 7 |
| 1.55. | Intercompany Claim | 7 |
| 1.56. | Intercreditor Agreement | 7 |
| 1.57. | Investors | 7 |
| 1.58. | Junior Notes | 8 |
| 1.59. | Laminates | 8 |
| 1.60. | Laminates Equity Interests | 8 |
| 1.61. | Litigation Claims | 8 |
| 1.62. | Management Incentive Plan | 8 |

# TABLE OF CONTENTS
## (continued)

| | | |
|---|---|---|
| 1.63. | New Administrative Agent | 8 |
| 1.64. | Newco | 8 |
| 1.65. | New Common Stock | 8 |
| 1.66. | New Senior Secured Revolving Loan Facility | 8 |
| 1.67. | New Senior Secured Term Loan Facility | 9 |
| 1.68. | Oaktree | 10 |
| 1.69. | Oaktree Cash | 10 |
| 1.70. | Oaktree Claims | 10 |
| 1.71. | Oaktree Letter | 10 |
| 1.72. | Oaktree Senior Subordinated Notes | 10 |
| 1.73. | Other Equity Interests | 10 |
| 1.74. | Other Secured Claims | 10 |
| 1.75. | PBGC Claim | 11 |
| 1.76. | Petition Date | 11 |
| 1.77. | Plan of Reorganization | 11 |
| 1.78. | Plan Supplement | 11 |
| 1.79. | Prepetition Agent | 11 |
| 1.80. | Priority Non-Tax Claim | 11 |
| 1.81. | Priority Tax Claim | 11 |
| 1.82. | Ratable Proportion | 11 |
| 1.83. | Reconstituted Committee | 11 |
| 1.84. | Reorganization Cases | 11 |
| 1.85. | Reorganized | 11 |
| 1.86. | Reorganized Debtors | 11 |
| 1.87. | Required Lenders | 11 |
| 1.88. | Restructuring Transactions | 12 |
| 1.89. | Restructuring Transactions Letter | 12 |
| 1.90. | Rights Offering | 12 |
| 1.91. | Schedules | 12 |
| 1.92. | Second Amended and Restated Credit Agreement | 12 |
| 1.93. | Secured Claim | 12 |
| 1.94. | Securities Act | 12 |

1.95. Securities Litigation Claim ........................................................................ 12

1.96. Senior Lender Secured Claim .................................................................... 12

1.97. Senior Secured Lenders ............................................................................. 12

1.98. Senior Subordinated Notes ........................................................................ 12

1.99. Senior Subordinated Notes Claim ............................................................. 12

1.100. Shares ......................................................................................................... 13

1.101. Steering Committee .................................................................................... 13

1.102. Subscription Agent ..................................................................................... 13

1.103. Subscription Commencement Date ............................................................ 13

1.104. Subscription Expiration Date ..................................................................... 13

1.105. Subscription Form ...................................................................................... 13

1.106. Subscription Purchase Price ....................................................................... 13

1.107. Subscription Record Date ........................................................................... 13

1.108. Subscription Rights .................................................................................... 13

1.109. Subsidiary Shares ....................................................................................... 13

1.110. Unsecured Claims ....................................................................................... 13

B. Interpretation; Application of Definitions and Rules of Construction ......................... 13

SECTION 2. ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS ....... 14

2.1. Administrative Expense Claims ................................................................. 14

2.2. Compensation and Reimbursement Claims ................................................ 14

2.3. Priority Tax Claims .................................................................................... 15

SECTION 3. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ........................... 15

3.1. Classes for the Debtors ............................................................................... 15

SECTION 4. TREATMENT OF CLAIMS AND EQUITY INTERESTS ................................. 16

4.1. Priority Non-Tax Claims (Class A) ............................................................ 16

4.2. Other Secured Claims (Class B) ................................................................ 16

4.3. Senior Lender Secured Claims (Class C) .................................................... 16

4.4. General Unsecured Claims (Class D) ......................................................... 16

4.5. Convenience Claims (Class E) .................................................................... 17

4.6. Intercompany Claims (Class F) .................................................................. 17

4.7. Securities Litigation Claims (Class G) ....................................................... 17

4.8. Laminates Equity Interests (Class H-1) ...................................................... 17

4.9. Holdings Preferred Equity Interests (Class H-2) ........................................... 17

4.10. Other Equity Interests (Class H-3) ............................................................. 17

SECTION 5.     MEANS FOR IMPLEMENTATION ................................................... 18

5.1. Acquisition Agreement ................................................................................. 18

5.2. Effect of Acquisition Agreement ................................................................. 18

5.3. Restructuring Transactions .......................................................................... 19

5.4. Closing on the Acquisition Agreement ........................................................ 19

5.5. Deemed Substantive Consolidation of Debtors for Plan of
Reorganization Purposes Only ..................................................................... 19

5.6. Termination of the DIP Agreement .............................................................. 20

5.7. Authorization of Shares, Subsidiary Shares, GUC Notes, and Junior
Notes ............................................................................................................ 20

5.8. Exit Facilities .............................................................................................. 20

5.9. Intercreditor Agreement .............................................................................. 20

5.10. Escrow Agreement and Reserves ................................................................. 20

5.11. GUC Notes Indenture .................................................................................. 20

5.12. Cancellation of Existing Agreements ........................................................... 21

5.13. Cancellation of Holdings Preferred Equity Interests and Laminates
Equity Interests ............................................................................................ 21

5.14. Boards of Directors ..................................................................................... 21

5.15. Officers ....................................................................................................... 21

5.16. Corporate Action ......................................................................................... 21

5.17. Management Incentive Plan ......................................................................... 22

5.18. Section 1145 Exemption .............................................................................. 22

5.19. Oaktree Cash ............................................................................................... 22

SECTION 6.     DISTRIBUTIONS ............................................................................. 22

6.1. Record Date for Distributions ...................................................................... 22

6.2. Date of Distributions ................................................................................... 22

6.3. Postpetition Interest On Claims ................................................................... 23

6.4. Distributions to Class D ............................................................................... 23

6.5. Distributions to Class E ............................................................................... 23

6.6. Disbursing Agent ......................................................................................... 23

6.7. Rights and Powers of Disbursing Agent ...................................................... 24

**TABLE OF CONTENTS**
**(continued)**

| | | | |
|---|---|---|---|
| | 6.8. | Setoffs | 24 |
| | 6.9. | Delivery of Distributions | 24 |
| | 6.10. | Manner of Payment Under the Plan of Reorganization | 25 |
| | 6.11. | No Fractional Shares or Fractional Subscription Rights | 25 |
| | 6.12. | Minimum Distributions | 25 |
| | 6.13. | Distributions After Effective Date | 25 |
| | 6.14. | Allocation of Plan of Reorganization Distributions Between Principal and Interest | 25 |
| | 6.15. | Withholding and Reporting Requirements | 26 |
| SECTION 7. | | PROCEDURES FOR TREATING DISPUTED CLAIMS | 26 |
| | 7.1. | Objections to Claims | 26 |
| | 7.2. | No Distributions Pending Allowance | 26 |
| | 7.3. | Estimation of Claims | 27 |
| | 7.4. | Distributions Withheld for Disputed Unsecured Claims | 27 |
| | 7.5. | Distributions Relating to Disputed Claims | 28 |
| | 7.6. | Preservation of Rights to Settle Claims | 28 |
| | 7.7. | Disallowed Claims | 28 |
| SECTION 8. | | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 29 |
| | 8.1. | General Treatment | 29 |
| | 8.2. | Cure of Defaults | 29 |
| | 8.3. | Rejection Claims | 30 |
| | 8.4. | Survival of Indemnification Obligations | 30 |
| | 8.5. | Survival of Other Employment Arrangements | 30 |
| | 8.6. | Insurance Policies | 30 |
| | 8.7. | PBGC Claims | 31 |
| SECTION 9. | | THE RIGHTS OFFERING | 31 |
| | 9.1. | Issuance of Subscription Rights | 31 |
| | 9.2. | Subscription Period | 31 |
| | 9.3. | Subscription Purchase Price | 31 |
| | 9.4. | Exercise of Subscription Rights | 31 |
| | 9.5. | Transfer of Subscription Rights; Revocation | 32 |
| | 9.6. | Distribution of New Common Stock | 32 |

9.7. Disputed Claims ................................................................................. 32

9.8. No Interest ...................................................................................... 33

9.9. Validity of Exercise of Subscription Rights ...................................... 33

SECTION 10. CONDITIONS PRECEDENT TO THE CONFIRMATION DATE AND
EFFECTIVE DATE ............................................................................ 33

10.1. Conditions Precedent to the Confirmation Date ............................. 33

10.2. Conditions Precedent to the Effective Date .................................... 33

10.3. Waiver of Conditions Precedent ..................................................... 35

SECTION 11. EFFECT OF CONFIRMATION ..................................................... 35

11.1. Revesting of Assets ........................................................................ 35

11.2. Discharge of Claims and Termination of Equity Interests ............... 35

11.3. Discharge of Debtors ...................................................................... 35

11.4. Term of Injunctions or Stays .......................................................... 36

11.5. Injunction Against Interference with the Plan of Reorganization ..... 36

11.6. Injunction Regarding Worthless Stock Deduction .......................... 36

11.7. Release and Exculpation ................................................................ 36

11.8. Injunction Relating to Exculpation and Release ............................. 37

11.9. Avoidance Actions ......................................................................... 37

SECTION 12. RETENTION OF JURISDICTION ................................................. 37

12.1. Jurisdiction of the Bankruptcy Court .............................................. 37

SECTION 13. MISCELLANEOUS PROVISIONS ................................................ 39

13.1. Payment of Statutory Fees ............................................................. 39

13.2. Retiree Benefits ............................................................................. 39

13.3. Reconstitution of Creditors' Committee ......................................... 39

13.4. Recognition of Guaranty Rights ..................................................... 39

13.5. Certain Indenture Trustee Fees and Expenses ............................... 40

13.6. Substantial Consummation ............................................................ 40

13.7. Amendments .................................................................................. 40

13.8. Sections 1125 and 1126 of the Bankruptcy Code .......................... 40

13.9. Cramdown ..................................................................................... 41

13.10. Expedited Determination of Taxes ................................................. 41

13.11. Waiver of Bankruptcy Rules 3020(e) and 7062 ............................. 41

**TABLE OF CONTENTS**
**(continued)**

**Page**

13.12.  Severability.................................................................................................... 41

13.13.  Revocation or Withdrawal of the Plan........................................................... 42

13.14.  Governing Law ............................................................................................... 42

13.15.  Time................................................................................................................ 42

13.16.  Notices ........................................................................................................... 42

13.17.  Exemption from Transfer Taxes.................................................................... 44

13.18.  Binding Effect................................................................................................ 44

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
| | | |
|---|---|---|
| In re | : | Chapter 11 Case No. |
| | : | |
| | : | 02-10969 (BRL) |
| FORMICA CORPORATION, et al., | : | |
| | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | |

-------------------------------------------------------------------x

**DEBTORS' SECOND AMENDED AND RESTATED JOINT PLAN OF REORGANIZATION**
**UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

Formica Corporation, Design Communications International, Inc., Laminates Acquisition Co., FM Holdings Inc., Formica International Corporation, STEL Industries, Inc., Wildon Industries, Inc., Wildon Corporation, Unidur Inc. (U.S.A.), and The Diller Corporation, each a debtor and debtor in possession, propose the following joint Chapter 11 Plan of Reorganization, pursuant to section 1121(a) of title 11 of the United States Code:

**SECTION 1. DEFINITIONS AND INTERPRETATION**

**A. Definitions.**

The following terms used herein shall have the respective meanings defined below:

1.1. **Acquisition Agreement** means the Stock Purchase Agreement between the Debtors and the Buyer, dated as of June 12, 2003, as amended or modified.

1.2. **Additional Debt** means any indebtedness for borrowed money or letters of credit of the Reorganized Debtors or their Affiliates, other than the Exit Facilities, the GUC Notes, the Junior Notes, existing industrial development agency bonds, or any existing direct loans to or credit facilities for the benefit of foreign Affiliates.

1.3. **Administrative Expense Claim** means any right to payment constituting a cost or expense of administration of any of the Reorganization Cases allowed under sections 503(b) and 507(a)(1) of the Bankruptcy Code, including without limitation, any actual and necessary costs and expenses of preserving the Debtors' estates, any actual and necessary costs and expenses of operating the Debtors' businesses, any indebtedness or obligations incurred or assumed by the Debtors, as debtors in possession, during the Reorganization Cases, including without limitation, for the acquisition or lease of property or an interest in property or the rendition of services, for any personal injury claims, tort claims, or other similar litigation claims arising after the Petition Date, to the extent not covered by insurance, for any allowances of compensation and reimbursement of expenses to the extent allowed by Final Order under sections 330, 331, or 503 of the Bankruptcy Code, and on account of any fees or charges assessed against the estates of the Debtors under section 1930 of chapter 123 of title 28 of the United States Code.

1.4. **Affiliate** has the meaning set forth in section 101(2) of the Bankruptcy Code.

1.5.    **Allowed** means, with reference to any Claim: (a) any Claim against any Debtor which has been listed by such Debtor in the Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed; (b) any timely filed Claim as to which no objection to allowance has been timely interposed in accordance with Section 7.1 hereof or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder; (c) any Claim as to which the liability of the Debtors and the amount thereof are determined by final order of a court of competent jurisdiction other than the Bankruptcy Court; or (d) any Claim expressly allowed hereunder.

1.6.    **Amended Bylaws** means the Bylaws of any Reorganized Debtor, as restated, substantially in the form(s) set forth in the Plan Supplement.

1.7.    **Amended Certificate of Incorporation** means the Certificate of Incorporation of any Reorganized Debtor, as amended and restated, substantially in the form(s) set forth in the Plan Supplement.

1.8.    **Approval Order** means the order of the Bankruptcy Court, dated July 1, 2003, approving and authorizing, among other things, the Debtors' execution of the Acquisition Agreement and their performance thereunder.

1.9.    **Bankruptcy Code** means title 11 of the United States Code, as amended from time to time.

1.10.    **Bankruptcy Court** means the United States Bankruptcy Court for the Southern District of New York having jurisdiction over the Reorganization Cases and, to the extent the reference made under section 157 of title 28 of the United States Code is withdrawn, the United States District Court for the Southern District of New York.

1.11.    **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, applicable to the Reorganization Cases, and any Local Rules of the Bankruptcy Court.

1.12.    **Board of Directors** means each Board of Directors of the Debtors or Reorganized Debtors, as they may exist from time to time.

1.13.    **Business Day** means any day other than a Saturday, a Sunday, or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

1.14.    **Buyer** means FC Acquisition Holding, Corp., the purchaser of the Shares and/or Subsidiary Shares pursuant to the Acquisition Agreement or its assignee or designee.

1.15.    **Cash** means legal tender of the United States of America.

1.16.    **Cerberus** means Cerberus Capital Management, L.P., a Delaware limited partnership.

1.17.    ***Cerberus Claims*** means the General Unsecured Claims held by Cerberus and its Affiliates as of the original date of the Acquisition Agreement.

1.18.    ***Claim*** has the meaning set forth in section 101 of the Bankruptcy Code.

1.19.    ***Class*** means any group of Claims or Equity Interests classified by the Plan of Reorganization pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

1.20.    ***Collateral*** means any property or interest in property of the estate of any Debtor subject to a lien, charge, or other encumbrance to secure the payment or performance of a Claim, which lien, charge, or other encumbrance is not subject to avoidance under the Bankruptcy Code.

1.21.    ***Confirmation Date*** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on its docket.

1.22.    ***Confirmation Hearing*** means the hearing to be held by the Bankruptcy Court to consider confirmation of the Plan of Reorganization, as such hearing may be adjourned or continued from time to time.

1.23.    ***Confirmation Order*** means the order or orders of the Bankruptcy Court confirming the Plan of Reorganization in form and substance reasonably acceptable to the Debtors, the Steering Committee, the Investors and the Creditors' Committee.

1.24.    ***Convenience Claim*** means any prepetition non-priority, unsecured Claim against any of the Debtors that is Allowed in an amount of $50,000.00 or less or that is reduced by the holder thereof to $50,000.00.

1.25.    ***Creditors' Committee*** means the statutory committee of unsecured creditors appointed in the Reorganization Cases, as constituted from time to time.

1.26.    ***Debtors*** means Formica; Design Communications International, Inc.; Laminates; Holdings; Formica International Corporation; STEL Industries, Inc.; Wildon Industries, Inc.; Wildon Corporation; Unidur Inc. (U.S.A.), and The Diller Corporation.

1.27.    ***DIP Agreement*** means the Debtor in Possession Credit Agreement, dated as of March 5, 2002, as approved by orders of the Bankruptcy Court, dated March 5 and 26, 2002, and July 10, 2003, among the Debtors, the lenders party thereto, Transamerica Business Capital Corporation, as administrative agent and lender, and Angelo, Gordon & Co., L.P., Bayerische Hypo-Und Vereinsbank AG New York Branch, Credit Lyonnais New York Branch, Foothill Income Trust II L.P., General Electric Capital Corporation, as syndication agents and lenders, and a syndicate of other financial institutions, as amended from time to time.

1.28.    ***DIP Claims*** means all Claims arising under the DIP Agreement.

1.29.    ***Disbursing Agent*** means any entity or entities designated by a Debtor or a Reorganized Debtor as a disbursing agent under Section 6 hereof; *provided*, that the Escrow Agent shall be the Disbursing Agent with respect to the Disputed Unsecured Claims Reserve and the Subscription Agent shall be the Disbursing Agent with respect to the Subscription Rights and the New Common Stock in connection therewith.

1.30.    ***Disclosure Statement*** means that certain disclosure document relating to the Plan of Reorganization, including without limitation, all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

1.31.    ***Disputed***  means, with reference to any Claim or Equity Interest, any Claim or Equity Interest proof of which was timely and properly filed and which has been or hereafter is listed on the Schedules as unliquidated, disputed, or contingent, and in either case or in the case of an Administrative Expense Claim, any Administrative Expense Claim, Claim, or Equity Interest which is disputed under the Plan of Reorganization or as to which the Debtors or, if not prohibited by the Plan of Reorganization, any other party in interest has interposed a timely objection and/or request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018, which objection and/or request for estimation has not been withdrawn or determined by a Final Order, and any Claim or Equity Interest, proof of which was required to be filed by order of the Bankruptcy Court but as to which a proof of claim or interest was not timely or properly filed.

1.32.    ***Disputed Unsecured Claims Reserve*** means the reserve governed by the Plan of Reorganization and the Escrow Agreement pursuant to Section 7.4 hereof.

1.33.    ***Domestic Junior Notes*** means the subordinated secured notes in the aggregate amount of approximately $85,000,000.00 issued by Reorganized Wildon Industries, Inc. and Reorganized Diller Corporation to Reorganized Formica (and acquired from Reorganized Formica by Newco Domestic Holding Corp. pursuant to the Restructuring Transactions), and guaranteed by Newco, Reorganized Laminates, Reorganized Holdings, Reorganized STEL Industries, Inc., Wildon LLC, and Formica International LLC, maturing on the fifteenth anniversary of their issuance and accruing interest at a rate of 12% *per annum*, payable-in-kind, as further described in the Restructuring Transactions Letter.  The Domestic Junior Notes shall be secured by junior liens on all of the assets of their issuers and guarantors: (a) except that the liens (i) with respect to Reorganized Wildon Industries, Inc.'s stock in Tenedoro Formica Mexico SA de CV ("Formica Mexico") and Formica Canada, Inc. ("Formica Canada"), and (ii) with respect to Newco's stock in Newco Foreign Holding Corp., will be limited to liens on 65% of such stock; and (b) excluding liens on (i) any proceeds of insurance (existing as of the Effective Date) for asbestos exposure against Formica to the extent such proceeds are used for the purposes of paying third party Claims, (ii) any causes of action held by Reorganized Laminates to the extent that such liens are not permitted under applicable law, including without limitation, "Laminates Acquisition Co., Claimant and BTR Australia Limited, Defendant, Claim No. 2001 Folio 358, In the High Court of Justice Queen's Bench Division, Commercial Court" but excluding the proceeds of such causes of action to the extent permissible by applicable law, (iii) assets subject to existing liens of other secured parties that shall be reinstated pursuant to the Plan of Reorganization, but excluding those assets that are also subject to the existing liens of the Senior Secured Lenders under the Second Amended and Restated Credit Agreement, and (iv) any Cash held in escrow pursuant to the Plan of Reorganization for distributions to holders of Unsecured Claims.  The Domestic Junior Notes shall be subordinated to all other indebtedness, including but not limited to, the Exit Facilities and the GUC Notes.  The junior liens securing the Domestic Junior Notes shall be subordinated to liens securing other indebtedness, in accordance with the terms of the Intercreditor Agreement.

1.34.    ***Effective Date*** means a Business Day selected by the Debtors and agreed to by the Buyer on or after the Confirmation Date on which (a) no stay of the Confirmation Order is in effect; and (b) the conditions to the effectiveness of the Plan of Reorganization specified in Section 10 hereof have been satisfied or waived.  The Effective Date shall be no later than 120 days after the later of (x) the Confirmation Date; (y) the date any stay of the Confirmation Order is dissolved; or (z) the date on which the conditions to the effectiveness of the Plan of Reorganization specified in Section 10 hereof have been satisfied or waived.

1.35. **Eligible Claimant** means the holder of a General Unsecured Claim that is an "accredited investor" as defined in paragraph (a) of Rule 501 of the Securities Act, and a "qualified institutional buyer" as defined in paragraph (a) of Rule 144A of the Securities Act, that is eligible to subscribe to and exercise Subscription Rights under the Rights Offering.

1.36. **Equity Interest** means the interest of any holder of an equity security of any of the Debtors represented by any issued and outstanding shares of common or preferred stock or other instrument evidencing a present ownership interest in any of the Debtors, whether or not transferable, or any option, warrant, or right, contractual or otherwise, to acquire any such interest.

1.37. **Escrow Agent** means The Bank of New York in its capacity as escrow agent under the Escrow Agreement.

1.38. **Escrow Agreement** means the Escrow Agreement dated as of the Effective Date by and between the Reorganized Debtors and the Escrow Agent governing the terms and conditions of the non-interest bearing escrow account established in accordance with Section 7.4 hereof with respect to the Disputed Unsecured Claims Reserve.

1.39. **Excess Cash** means all unrestricted Cash on the Effective Date less: (a) required payments under the Plan of Reorganization; (b) Cash payable with respect to the Exit Facilities to be entered into on the Effective Date; and (c) a reserve for ongoing working capital needs and other corporate purposes reasonably agreed upon by the Debtors, the Investors, and the Steering Committee.

1.40. **Exercising Claimant** means an Eligible Claimant that has exercised the Subscription Rights, if any, that such Eligible Claimant was entitled to exercise on account of its Claim.

1.41. **Exit Facilities** means, collectively, the New Senior Secured Revolving Loan Facility and the New Senior Secured Term Loan Facility.

1.42. **Final Order** means an order or judgment of the Bankruptcy Court entered by the Clerk of the Bankruptcy Court on the docket in the Reorganization Cases, which has not been reversed, vacated, or stayed and as to which (a) the time to appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing has expired or been waived in writing in form and substance satisfactory to the Debtors or the Reorganized Debtors, and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument, or rehearing shall then be pending; or (b) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing shall have expired; *provided,* that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order, shall not cause such order not to be a Final Order.

1.43. **Foreign Junior Notes** means the subordinated secured notes in the aggregate amount of approximately $80,000,000.00 issued by Newco Foreign Subholding Corp. I and Newco Foreign Subholding Corp. II to Newco (which will contribute them to Newco Foreign Holding Corp.) and guaranteed by cross-corporate guaranties of such issuers, and by Newco Domestic Holding Corp., and each of their direct and indirect subsidiaries (a) to the same extent such entities are obligors or guarantors under the Second Amended and Restated Credit Agreement in respect of the direct loans made to the non-Debtor subsidiaries organized outside of the United States; or (b) to the extent that such entities may, under applicable law and without adverse tax consequences, provide guaranties of such foreign debt. The

Foreign Junior Notes shall mature on the fifteenth anniversary of their issuance and accrue interest at a rate of 12% *per annum*, payable-in-kind, as further described in the Restructuring Transactions Letter. The Foreign Junior Notes shall be: (y) secured by junior liens on all of the assets of their issuers and guarantors, excluding liens on (i) any proceeds of insurance (existing as of the Effective Date) for asbestos exposure against Formica to the extent such proceeds are used for the purposes of paying third party Claims, (ii) any causes of action held by Reorganized Laminates to the extent that such liens are not permitted under applicable law, including without limitation, "Laminates Acquisition Co., Claimant and BTR Australia Limited, Defendant, Claim No. 2001 Folio 358, In the High Court of Justice Queen's Bench Division, Commercial Court" but excluding the proceeds of such causes of action to the extent permissible by applicable law, (iii) assets subject to existing liens of other secured parties that shall be reinstated pursuant to the Plan of Reorganization, but excluding those assets that are also subject to the existing liens of the Senior Secured Lenders under the Second Amended and Restated Credit Agreement, and (iv) any Cash held in escrow pursuant to the Plan of Reorganization for distributions to holders of Unsecured Claims; and (z) subordinated to all other indebtedness, including but not limited to, the Exit Facilities and the GUC Notes. The junior liens securing the Foreign Junior Notes shall be subordinated to liens securing other indebtedness, in accordance with the terms of the Intercreditor Agreement.

   1.44. ***Formica*** means Formica Corporation, a Delaware corporation and a Debtor.

   1.45. ***General Unsecured Claim*** means any prepetition Claim against any of the Debtors that is not an Other Secured Claim, Administrative Expense Claim, Priority Tax Claim, Priority Non-Tax Claim, Convenience Claim, Intercompany Claim, Securities Litigation Claim, or Senior Lender Secured Claim.

   1.46. ***GUC Distribution Assets*** means (a) $12,775,000.00 in Cash and the Oaktree Cash, if any (collectively, the "GUC Cash"); and (b) the GUC Notes; *provided*, that the respective amounts of such GUC Cash and GUC Notes shall be reduced, dollar-for-dollar, in accordance with the GUC Reduction Ratio by (i) the *pro rata* share of such GUC Cash and GUC Notes that otherwise would have been distributed to all holders of Allowed general unsecured claims that are Allowed Convenience Claims, and (ii) the amounts which holders of Allowed General Unsecured Claims that elect to participate in the Rights Offering (other than the Cerberus Claims and the Oaktree Claims) would have received had such holders not participated in the Rights Offering; *provided*, that the aggregate amount of the GUC Cash distributable to holders of the Senior Subordinated Notes Claims shall be further reduced, dollar-for-dollar, by the reasonable fees and expenses of the Indenture Trustee, including the reasonable fees and expenses of professionals retained by the Indenture Trustee, as described in Section 13.5 hereof.

   1.47. ***GUC Notes*** means the senior subordinated secured notes issued and/or guaranteed by Newco, Newco Domestic Holding Corp., each direct and indirect subsidiary of Newco Domestic Holding Corp. (except Formica Mexico and Formica Canada), Reorganized Laminates, Reorganized Holdings, Reorganized Formica, and Formica International LLC in the principal amount of up to $8,675,000.00, and that are secured by substantially all of the assets of the obligors and the guarantors of the GUC Notes (a) except that the liens (i) with respect to Reorganized Wildon Industries Inc.'s stock in Formica Mexico and Formica Canada, and (ii) Newco's stock in Newco Foreign Holding Corp., will be limited to liens on 65% of such stock; and (b) excluding liens on (i) any proceeds of insurance (existing as of the Effective Date) for asbestos exposure against Formica to the extent such proceeds are used for the purposes of paying third party Claims, (ii) any causes of action held by Reorganized Laminates to the extent that such liens are not permitted under applicable law, including without limitation, "Laminates Acquisition Co., Claimant and BTR Australia Limited, Defendant, Claim No. 2001 Folio 358, In the High Court of Justice Queen's Bench Division, Commercial Court" but excluding the proceeds of such causes of action to the extent permissible by applicable law, (iii) assets subject to existing liens of other secured parties that shall be reinstated pursuant to the Plan of

Reorganization, but excluding those assets that are also subject to the existing liens of the Senior Secured Lenders under the Second Amended and Restated Credit Agreement, and (iv) any Cash held in escrow pursuant to the Plan of Reorganization for distributions to holders of Unsecured Claims. The GUC Notes shall bear interest at an annual rate equal to the interest rate on the New Senior Secured Term Loan Facility from time to time prevailing plus 100 basis points; *provided*, that if the aggregate amount of Additional Debt at any time exceeds $50,000,000.00, the interest rate on the GUC Notes shall increase to 200 basis points over the interest rate on the New Senior Secured Term Loan Facility from time to time prevailing. Such interest shall be payable semi-annually, and all principal and accrued but unpaid interest under the GUC Notes shall be due and payable on the seventh anniversary of the date of the issuance of such GUC Notes, unless prepaid in accordance with the terms of the Intercreditor Agreement and the GUC Notes Indenture.

1.48. ***GUC Notes Indenture*** means the Indenture, dated as of the Effective Date, between the obligors and guarantors under the GUC Notes and the GUC Notes Indenture Trustee, governing the terms and conditions of the issuance of the GUC Notes to be included in the Plan Supplement in form and substance reasonably acceptable to the Debtors, the Steering Committee, the Investors, and the Creditors' Committee.

1.49. ***GUC Notes Indenture Trustee*** means The Bank of New York in its capacity as the indenture trustee for the GUC Notes under the GUC Notes Indenture, unless such entity shall have resigned or been replaced by a successor trustee, in which case said term shall refer to the successor.

1.50. ***GUC Reduction Ratio*** means the ratio of 59.6% of GUC Cash to 40.4% of GUC Notes, representing the ratio by which the GUC Distribution Assets will be reduced hereunder.

1.51. ***Holdings*** means FM Holdings Inc., a Delaware corporation and a Debtor.

1.52. ***Holdings Preferred Equity Interests*** means all the issued and outstanding shares of Series A Preferred Equity Interests in Holdings.

1.53. ***Indenture*** means the Indenture, dated as of February 22, 1999, between Formica and the Indenture Trustee, governing the terms and conditions of the issuance of the 10 7/8% Senior Subordinated Notes due 2009.

1.54. ***Indenture Trustee*** means The Bank of New York, in its capacity as the successor indenture trustee for the Senior Subordinated Notes under the Indenture, unless The Bank of New York shall have resigned or been replaced by a successor trustee, in which case said term shall refer to the successor.

1.55. ***Intercompany Claim*** means any claim of a Debtor against another Debtor.

1.56. ***Intercreditor Agreement*** means the Subordination Agreement among the obligors, guarantors, and holders or lenders under the Exit Facilities, the GUC Notes, and the Junior Notes and the GUC Notes Indenture Trustee, providing, among other things, for the relative priority of liens and ranking of indebtedness among such loans and facilities substantially in the form included in the Plan Supplement.

1.57. ***Investors*** means, collectively, Cerberus and Oaktree.

1.58. ***Junior Notes*** means the Domestic Junior Notes and the Foreign Junior Notes.

1.59. ***Laminates*** means Laminates Acquisition Co., a Delaware corporation and a Debtor.

1.60. ***Laminates Equity Interests*** means all the issued and outstanding shares of common stock or other Equity Interests in Laminates.

1.61. ***Litigation Claims*** means any Claim related to personal injury, property damage, products liability, wrongful death, patent liability, environmental damage, antitrust, asbestos, or other similar Claims against any of the Debtors.

1.62. ***Management Incentive Plan*** means the management incentive plan for key employees of the Debtors, which plan will provide, among other things, for options to purchase a number of shares of either (a) New Common Stock; or (b) stock of Newco's direct subsidiaries equivalent to, and in substitution for, any shares of New Common Stock, in an amount not to exceed 10% of the shares of New Common Stock outstanding as of the Effective Date (including New Common Stock issued upon exercise of the Subscription Rights), or an equivalent amount of shares of Newco's direct subsidiaries in lieu thereof.

1.63. ***New Administrative Agent*** means the administrative agent or agents under the New Senior Secured Revolving Loan Facility and the New Senior Secured Term Loan Facility.

1.64. ***Newco*** means [_____], a Bermuda corporation and the ultimate parent of Buyer.

1.65. ***New Common Stock*** means the shares of common stock, $0.01 par value, of Newco, authorized and issued hereunder or authorized for the purposes specified herein.

1.66. ***New Senior Secured Revolving Loan Facility*** means that certain senior secured revolving loan facility between the Reorganized Debtors, certain of their Affiliates identified below, and certain of the Senior Secured Lenders, which shall be included in the Plan Supplement and be in form and substance, including as to size (which shall be $65,000,000.00), reasonably acceptable to the Debtors, the Steering Committee, the Investors, and the Creditors' Committee. The New Senior Secured Revolving Loan Facility shall consist of a domestic portion and a foreign portion. Each of Newco, Newco Domestic Holding Corp., each direct and indirect subsidiary of Newco Domestic Holding Corp. (except Formica Mexico and Formica Canada), Reorganized Laminates, Reorganized Holdings, Reorganized Formica, and Formica International LLC shall be obligors and/or guarantors of the domestic portion of the New Senior Secured Revolving Loan Facility, which will be secured by liens on all of the assets of such entities: (a) except that the liens (i) with respect to Wildon Industries Inc.'s stock in Formica Mexico and Formica Canada, and (ii) with respect to Newco's stock in Newco Foreign Holding Corp., will be limited to liens on 65% of such stock; and (b) excluding liens on (i) any proceeds of insurance (existing as of the Effective Date) for asbestos exposure against Formica to the extent such proceeds are used for the purposes of paying third party Claims, (ii) any causes of action held by Reorganized Laminates to the extent that such liens are not permitted under applicable law, including without limitation, "Laminates Acquisition Co., Claimant and BTR Australia Limited, Defendant, Claim No. 2001 Folio 358, In the High Court of Justice Queen's Bench Division, Commercial Court" but excluding the proceeds of such causes of action to the extent permissible by applicable law, (iii) assets subject to existing liens of other secured parties that shall be reinstated pursuant to the Plan of Reorganization, but excluding those assets that are also subject to the existing liens of the Senior Secured Lenders under the Second Amended and Restated Credit Agreement, and (iv) any Cash held in escrow pursuant to the Plan of Reorganization for distributions to holders of Unsecured Claims.

Newco, Newco Domestic Holding Corp., and Reorganized Laminates and their respective direct and indirect subsidiaries shall be obligors and/or guarantors with respect to the foreign portion of the New Senior Secured Revolving Loan Facility, as well as Newco Foreign Holding Corp., Newco Foreign Subholding Corp. I, and Newco Foreign Subholding Corp. II, together with each of their direct and indirect subsidiaries: (a) to the extent of any direct loans made to such entities organized outside of the United States; and (b) to the extent that such entities may, under applicable law and without adverse tax consequences under Section 954 of the Internal Revenue Code or similar provision, provide guaranties of such foreign debt.  Such foreign portion of the New Senior Secured Revolving Loan Facility shall be secured by liens on substantially all of the assets of each obligor and guarantor but shall exclude liens upon (w) any proceeds of insurance (existing as of the Effective Date) for asbestos exposure against Formica to the extent such proceeds are used for the purposes of paying third party Claims; (x) any causes of action held by Reorganized Laminates to the extent that such liens are not permitted under applicable law, including without limitation, "Laminates Acquisition Co., Claimant and BTR Australia Limited, Defendant, Claim No. 2001 Folio 358, In the High Court of Justice Queen's Bench Division, Commercial Court" but excluding the proceeds of such causes of action to the extent permissible by applicable law; (y) assets subject to existing liens of other secured parties that shall be reinstated pursuant to the Plan of Reorganization, but excluding those assets that are also subject to the existing liens of the Senior Secured Lenders under the Second Amended and Restated Credit Agreement; and (z) any Cash held in escrow pursuant to the Plan of Reorganization for distributions to holders of Unsecured Claims.

1.67.  ***New Senior Secured Term Loan Facility*** means that certain senior secured term loan facility, between the Reorganized Debtors and certain of their Affiliates and the Senior Secured Lenders, having an aggregate principal amount equal to approximately $131,221,500.00 (subject to adjustment pursuant to the terms of the New Senior Secured Term Loan Facility Agreement), which amount represents 99.5% of: (a) the aggregate amount of the Senior Secured Lenders' Allowed Claims as of the Effective Date; less (b) $173,000,000.00; less (c) any Excess Cash paid to the Senior Secured Lenders on the Effective Date, payable over a six-year period and accruing interest at a rate, at the option of the Reorganized Debtors, of either (a) LIBOR plus no more than 5.0%; or (b) the prime rate plus no more than 3.5%, which rate may be subject to reduction from time to time, to be included in the Plan Supplement in form and substance reasonably acceptable to the Debtors, the Steering Committee, the Investors, and the Creditors' Committee.  The New Senior Secured Term Loan Facility shall consist of a domestic portion and a foreign portion.  Each of Newco, Newco Domestic Holding Corp., each direct and indirect subsidiary of Newco Domestic Holding Corp. (except Formica Mexico and Formica Canada), Reorganized Laminates, Reorganized Holdings, Reorganized Formica, and Formica International LLC shall be obligors and/or guarantors of the domestic portion of the New Senior Secured Term Loan Facility, which will be secured by liens on all of the assets of such entities: (a) except that the liens (i) with respect to Wildon Industries Inc.'s stock in Formica Mexico and Formica Canada, and (ii) with respect to Newco's stock in Newco Foreign Holding Corp., will be limited to liens on 65% of such stock; and (b) excluding liens on (i) any proceeds of insurance (existing as of the Effective Date) for asbestos exposure against Formica to the extent such proceeds are used for the purposes of paying third party Claims, (ii) any causes of action held by Reorganized Laminates to the extent that such liens are not permitted under applicable law, including without limitation, "Laminates Acquisition Co., Claimant and BTR Australia Limited, Defendant, Claim No. 2001 Folio 358, In the High Court of Justice Queen's Bench Division, Commercial Court" but excluding the proceeds of such causes of action to the extent permissible by applicable law, (iii) assets subject to existing liens of other secured parties that shall be reinstated pursuant to the Plan of Reorganization, but excluding those assets that are also subject to the existing liens of the Senior Secured Lenders under the Second Amended and Restated Credit Agreement, and (iv) any Cash held in escrow pursuant to the Plan of Reorganization for distributions to holders of Unsecured Claims.

Newco, Newco Domestic Holding Corp., and Reorganized Laminates and their respective direct and indirect subsidiaries shall be obligors and/or guarantors with respect to the foreign portion of the New Senior Secured Term Loan Facility, as well as Newco Foreign Holding Corp., Newco Foreign Subholding Corp. I, and Newco Foreign Subholding Corp. II, together with each of their direct and indirect subsidiaries: (a) to the extent of any direct loans made to such entities organized outside the United States; and (b) to the extent that such entities may, under applicable law and without adverse tax consequences under Section 954 of the Internal Revenue Code or similar provision, provide guaranties of such foreign debt. Such foreign portion of the New Senior Secured Term Loan Facility shall be secured by liens on substantially all of the assets of each obligor and guarantor but shall exclude liens upon (w) any proceeds of insurance (existing as of the Effective Date) for asbestos exposure against Formica to the extent such proceeds are used for the purposes of paying third party Claims, (x) any causes of action held by Reorganized Laminates to the extent that such liens are not permitted under applicable law, including without limitation, "Laminates Acquisition Co., Claimant and BTR Australia Limited, Defendant, Claim No. 2001 Folio 358, In the High Court of Justice Queen's Bench Division, Commercial Court" but excluding the proceeds of such causes of action to the extent permissible by applicable law, (y) assets subject to existing liens of other secured parties that shall be reinstated pursuant to the Plan of Reorganization, but excluding those assets that are also subject to the existing liens of the Senior Secured Lenders under the Second Amended and Restated Credit Agreement, and (z) any Cash held in escrow pursuant to the Plan of Reorganization for distributions to holders of Unsecured Claims.

1.68.    ***Oaktree*** means Oaktree Capital Management LLC, a California limited liability company.

1.69.    ***Oaktree Cash*** means the amount of Cash, if any, that Oaktree will contribute to the GUC Distribution Assets on the Effective Date equal to (a) 20%; of (b) the amount by which (i) the face dollar amount of the Oaktree Senior Subordinated Notes and other General Unsecured Claims held by Oaktree as of the original date of the Acquisition Agreement <u>minus</u> $1,610,000.00 exceeds (ii) the face dollar amount of Senior Subordinated Notes and other General Unsecured Claims held by Oaktree on the Effective Date (not including General Unsecured Claims acquired by Oaktree after the original date of the Acquisition Agreement), as evidenced by the Oaktree Letter.

1.70.    ***Oaktree Claims*** means the General Unsecured Claims held by Oaktree as of the original date of the Acquisition Agreement, as such Claims may have been reduced by the transfer of Claims or underlying Oaktree Senior Subordinated Notes after the original date of the Acquisition Agreement.

1.71.    ***Oaktree Letter*** means the letter to be provided by Oaktree to the counsel for the Creditors' Committee no later than the Effective Date setting forth the face dollar amount of Senior Subordinated Notes and other General Unsecured Claims held by Oaktree on the Effective Date.

1.72.    ***Oaktree Senior Subordinated Notes*** means the Senior Subordinated Notes held by Oaktree and its Affiliates as of the original date of the Acquisition Agreement.

1.73.    ***Other Equity Interests*** means the Equity Interests in the Debtors other than Laminates and Holdings.

1.74.    ***Other Secured Claims*** means any Secured Claim not constituting a secured Senior Lender Secured Claim.

1.75.    ***PBGC Claim*** means any Claim asserted against any of the Debtors by the Pension Benefit Guaranty Corporation.

1.76.    ***Petition Date*** means March 5, 2002, the date on which the Reorganization Cases were commenced.

1.77.    ***Plan of Reorganization*** means this Second Amended and Restated Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, including the exhibits and schedules hereto and to the Plan Supplement, as the same may be amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.78.    ***Plan Supplement*** means the supplement to the Plan of Reorganization containing certain documents relevant to the implementation of such Plan of Reorganization or the treatment of Allowed Claims thereunder, including without limitation, the Amended Bylaws, the Amended Certificate of Incorporation, the Intercreditor Agreement, the Exit Facilities, the GUC Notes Indenture, the Junior Notes and the Escrow Agreement.  The Plan Supplement will be filed with the Bankruptcy Court and posted on the web site www.formica.com no later than five Business Days prior to the deadline for voting to accept or reject the Plan of Reorganization.

1.79.    ***Prepetition Agent*** means the administrative agent under the Second Amended and Restated Credit Agreement.

1.80.    ***Priority Non-Tax Claim*** means any Claim other than a Priority Tax Claim, entitled to priority in payment as specified in sections 507(a)(2), (3), (4), (5), (6), (7), or (9) of the Bankruptcy Code.

1.81.    ***Priority Tax Claim*** means any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.82.    ***Ratable Proportion*** means the ratio (expressed as a percentage) of the amount of an Allowed Claim in a Class to the aggregate amount of all Allowed Claims in the same Class.  For purposes of calculating the Ratable Proportion of GUC Distribution Assets to Class D, the Cerberus Claims, the Oaktree Claims, and the Claims of the Eligible Claimants that participate in the Rights Offering shall not be included in the aggregate amount of all Allowed Claims in Class D.

1.83.    ***Reconstituted Committee*** has the meaning set forth in Section 13.3 hereof.

1.84.    ***Reorganization Cases*** means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtors on March 5, 2002 in the Bankruptcy Court and styled In re Formica Corporation *et al.*, 02-10969 (BRL).

1.85.    ***Reorganized*** means, with respect to any Debtor, such Debtor, as reorganized as of the Effective Date in accordance with the Plan of Reorganization.

1.86.    ***Reorganized Debtors*** means each of the Debtors, as reorganized as of the Effective Date in accordance with the Plan of Reorganization.

1.87.    ***Required Lenders*** means the definition ascribed to such term in the Second Amended and Restated Credit Agreement.

1.88.    ***Restructuring Transactions*** means the transactions substantially described in Exhibit B attached hereto, as may be modified or amended and set forth in the Plan Supplement.

1.89.   ***Restructuring Transactions Letter*** means that certain letter of the Buyer pursuant to Section 5.8 of the Acquisition Agreement, dated June 24, 2003, as amended and restated as of October 7, 2003, as it may be amended from time to time.

1.90.   ***Rights Offering*** means the offering to Eligible Claimants to subscribe to a private placement of up to 50% of the authorized and issued shares of New Common Stock (before dilution of the New Common Stock pursuant to the Management Incentive Plan), in connection with the Plan of Reorganization, as described in Section 9 hereof.

1.91.   ***Schedules*** means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtors under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007 and the Official Bankruptcy Forms of the Bankruptcy Rules as such schedules and statements have been or may be supplemented or amended through the Confirmation Date.

1.92.   ***Second Amended and Restated Credit Agreement*** means that certain Second Amended and Restated Credit Agreement, dated as of May 26, 2000, among Formica, Formica Limited, Formica Holdco (UK) Ltd., Formica Canada., Formica S.A., and Formica Espanola S.A., as borrowers, DLJ Capital Funding, Inc., as syndication agent, Bankers Trust Company, now known as Deutsche Bank Trust Company Americas, as the administrative agent, Credit Suisse First Boston, as document agent, and the lender parties thereto, and any of the documents and instruments relating thereto, as amended, supplemented, modified, or restated prior to March 5, 2002.

1.93.   ***Secured Claim*** means a Claim secured by Collateral or subject to setoff under section 553 of the Bankruptcy Code.

1.94.   ***Securities Act*** means the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder.

1.95.   ***Securities Litigation Claim*** means any Claim against any of the Debtors, whether or not the subject of an existing lawsuit, arising from rescission of a purchase or sale of shares or notes of any of the Debtors, for damages arising from the purchase or sale of any such security, or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of any such Claim.

1.96.   ***Senior Lender Secured Claim*** means any Claim (a) against Formica arising under the Second Amended and Restated Credit Agreement; or (b) against each of the Debtors other than Formica pursuant to the guaranty by such Debtor of the obligations specified in clause (a).

1.97.   ***Senior Secured Lenders*** means the lender parties under the Second Amended and Restated Credit Agreement.

1.98.   ***Senior Subordinated Notes*** means the 10 7/8% Senior Subordinated Notes due 2009 issued pursuant to the Indenture.

1.99.   ***Senior Subordinated Notes Claim*** means any Claim against the Debtors arising under, or on account of, the Senior Subordinated Notes.

1.100.   ***Shares*** means all the issued and outstanding shares of common stock of Reorganized Laminates.

1.101.  **_Steering Committee_** means the informal steering committee consisting of certain holders of a substantial amount of the Senior Lender Secured Claims.

1.102.  **_Subscription Agent_** means the person engaged by the Debtors to conduct the Rights Offering.

1.103.  **_Subscription Commencement Date_** means a Business Day determined by the Debtors, which day shall be a reasonable time prior to the Confirmation Date and the day on which the Subscription Form is mailed.

1.104.  **_Subscription Expiration Date_** means the date set by the Bankruptcy Court and specified in the Subscription Form, which shall be no earlier than 15 days after the Subscription Commencement Date, and which shall be the final date by which an Eligible Claimant must elect to subscribe to the Rights Offering.

1.105.  **_Subscription Form_** means the form to be used by a valid holder of Subscription Rights to exercise such Subscription Rights.

1.106.  **_Subscription Purchase Price_** means the purchase price set forth in the Subscription Form that an Exercising Claimant must pay in order to exercise its Subscription Rights and purchase the New Common Stock pursuant to, and in accordance with, Section 9 hereof.

1.107.  **_Subscription Record Date_** means the date that is ten days prior to the Subscription Commencement Date.

1.108.  **_Subscription Rights_** means the non-certificated rights to subscribe for the shares of New Common Stock to be offered to Eligible Claimants. Each Subscription Right will have an exercise price as set forth in Section 9 hereof, payable in Cash, and upon exercise and payment, a holder of each such right will receive one share of New Common Stock.

1.109.  **_Subsidiary Shares_** means all of the issued and outstanding shares of common stock of one or more of the Reorganized Debtors that are subsidiaries of Formica and/or the ownership interests of any or all of the Reorganized Debtors in their non-Debtor Affiliates.

1.110.  **_Unsecured Claims_** means the General Unsecured Claims and the Convenience Claims.

**B.    Interpretation; Application of Definitions and Rules of Construction.**

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, the feminine, and the neuter. Unless otherwise specified, all section, schedule, or exhibit references in the Plan of Reorganization are to the respective section in, article of, or schedule or exhibit to the Plan of Reorganization, as the same may be amended, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan of Reorganization as a whole and not to any particular section, subsection, or clause contained therein. A term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the Plan of Reorganization. The headings in the Plan of Reorganization are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Any reference in the Plan of Reorganization to a contract, instrument, release, or other agreement or document

being in a particular form or on particular terms and conditions means that such document shall be in substantially such form or substantially on such terms; *provided*, that any change to such form or terms that is materially adverse to a party to such document shall not be made without such party's consent (or the consent of the committee representing such party), which consent shall not be unreasonably withheld or delayed.  All exhibits and schedules to the Plan of Reorganization, including the Plan Supplement, are incorporated into the Plan of Reorganization and shall be deemed to be included in, and made a part of, the Plan of Reorganization as if fully set forth herein; *provided*, that they are filed no later than the Confirmation Hearing.

## SECTION 2.    ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

### 2.1.    *Administrative Expense Claims*.

Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a different treatment and except as set forth in Section 2.2 hereof with respect to claims for compensation for professional services rendered or reimbursement of expenses, the Reorganized Debtors shall pay to each holder of an Allowed Administrative Expense Claim Cash in an amount equal to such Claim on the later of the Effective Date and the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is practicable; *provided*, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business of the Debtors or the Reorganized Debtors shall be paid by the Debtors or the Reorganized Debtors, as applicable, in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.  On the Effective Date, all amounts owed under the DIP Agreement shall have been indefeasibly paid in full in Cash by wire transfer of immediately available funds, the commitments thereunder terminated, and (a) the outstanding letters of credit issued under the DIP Agreement will be returned to the issuer undrawn and marked cancelled; and (b) new letters of credit will be provided pursuant to the Exit Facilities to replace the outstanding letters of credit issued under the DIP Agreement.  Upon payment or satisfaction in full of all obligations under the DIP Agreement in accordance with the terms thereof, all liens and security interests granted to secure such obligations shall be deemed terminated and shall be of no further force and effect.

### 2.2.    *Compensation and Reimbursement Claims*.

All entities seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code (a) shall file their respective final applications for allowances of compensation for services rendered and reimbursement of expenses incurred by the date that is 60 days after the Effective Date; and (b) shall be paid in full in such amounts as are allowed by the Bankruptcy Court (i) upon the later of (A) the Effective Date, and (B) the date upon which the order relating to any such Allowed Administrative Expense Claim becomes a Final Order, or (ii) upon such other terms as may be mutually agreed upon between such holder of an Administrative Expense Claim and the Reorganized Debtors.  Objections to persons or entities seeking an award of the Bankruptcy Court for compensation for services rendered or reimbursement for expenses under sections 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code must be filed and served on the Reorganized Debtors, counsel for the Reorganized Debtors, and the person or entity to whose application the objections are addressed no later than 30 days after such application is filed.  The Debtors are authorized to pay compensation for services rendered and reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

2.3.    *Priority Tax Claims*.

Except to the extent that a holder of an Allowed Priority Tax Claim has been paid by the Debtors prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, at the sole option of the respective Reorganized Debtors: (a) Cash in an amount equal to such Allowed Priority Tax Claim on the later of the Effective Date and the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as is practicable; (b) equal annual Cash payments in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest at a fixed annual rate equal to the rate applicable to underpayments of federal income tax on the Effective Date (determined pursuant to section 6621 of the Internal Revenue Code, without regard to subsection (c) thereof) over a period through the sixth anniversary of the date of assessment of such Allowed Priority Tax Claim commencing on the first anniversary of the Effective Date; *provided*, that the Reorganized Debtors may, in their sole discretion, prepay all or a portion of any annual installment; or (c) upon such other terms determined by the Bankruptcy Court to provide the holder of such Allowed Priority Tax Claim deferred Cash payments having a value, as of the Effective Date, equal to such Allowed Priority Tax Claim.  All Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as such obligations become due.  This Section shall not affect the valid liens of any holder of an Allowed Priority Tax Claim.

## SECTION 3.    CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

The following table designates the Classes of Claims against, and Equity Interests in, each of the Debtors and specifies which of those Classes are: (a) impaired or unimpaired by the Plan of Reorganization; (b) entitled to vote to accept or reject the Plan of Reorganization in accordance with section 1126 of the Bankruptcy Code; and (c) deemed to reject the Plan of Reorganization.

3.1.    *Classes for the Debtors*.

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class A | Priority Non-Tax Claims | unimpaired | No |
| Class B | Other Secured Claims | unimpaired | No |
| Class C | Senior Lender Secured Claims | impaired | Yes |
| Class D | General Unsecured Claims | impaired | Yes |
| Class E | Convenience Claims | impaired | Yes |
| Class F | Intercompany Claims | impaired | No (deemed to reject) |
| Class G | Securities Litigation Claims | impaired | No (deemed to reject) |
| Class H-1 | Laminates Equity Interests | impaired | No (deemed to reject) |
| Class H-2 | Holdings Preferred Equity Interests | impaired | No (deemed to reject) |
| Class H-3 | Other Equity Interests | unimpaired | No |

### SECTION 4.   TREATMENT OF CLAIMS AND EQUITY INTERESTS

4.1.    ***Priority Non-Tax Claims (Class A)***.

Except to the extent that a holder of an Allowed Priority Non-Tax Claim against any of the Debtors has agreed to a different treatment of such Claim, each such holder shall receive in full satisfaction of such Claim, Cash in an amount equal to such Claim on the later of the Effective Date and the date such Allowed Priority Non-Tax Claim becomes Allowed, or as soon thereafter as is practicable.

4.2.    ***Other Secured Claims (Class B)***.

Except to the extent that a holder of an Allowed Other Secured Claim against any of the Debtors has agreed to a different treatment of such Claim in writing, each holder of an Allowed Other Secured Claim shall receive, at the option of the Debtors, either: (a) the Collateral securing such Allowed Other Secured Claim; (b) deferred payments in Cash in an amount equal to the present value of the Allowed Other Secured Claim; (c) payments or liens amounting to the indubitable equivalent of the value of the holder's interest in the estate's interest in the Collateral securing the Claim; (d) the treatment required under section 1124(2) of the Bankruptcy Code for such Claim to be reinstated or rendered unimpaired notwithstanding any contractual provision or applicable non-bankruptcy law that entitles the holder of an Allowed Other Secured Claim to demand or receive payment prior to the stated maturity of such Allowed Other Secured Claim from and after the occurrence of a default; or (e) such other treatment as the applicable Reorganized Debtor and the holder of such Allowed Other Secured Claim have agreed to in writing.  Notwithstanding the foregoing, each holder of an Allowed Other Secured Claim receiving the treatment specified in clause (a) or (b) above shall have a General Unsecured Claim for the amount by which the amount of its Allowed Claim exceeds the value of its Collateral.  The Debtors and the Reorganized Debtors specifically reserve the right to challenge the validity, nature, and perfection of, and to avoid pursuant to the provisions of the Bankruptcy Code and other applicable law, any purported liens relating to the Other Secured Claims.

4.3.    ***Senior Lender Secured Claims (Class C)***.

The Senior Lender Secured Claims shall be deemed Allowed in the aggregate amount of $305,750,248.00 as of June 30, 2003, subject to adjustment for, among other things, currency fluctuations.  The New Administrative Agent under the Second Amended and Restated Credit Agreement shall receive on the Effective Date, for distribution to, and allocation among, the holders of Senior Lender Secured Claims: (a) $173,000,000.00 in Cash; (b) Excess Cash; and (c) the New Senior Secured Term Loan Facility.

4.4.    ***General Unsecured Claims (Class D)***.

The Senior Subordinated Notes Claims shall be deemed Allowed in the aggregate amount of $227,015,365.00.  Each holder of an Allowed General Unsecured Claim shall receive (a) its Ratable Proportion of the GUC Distribution Assets on the Effective Date; or (b) if such holder is an Eligible Claimant, on the terms set forth in Section 9 hereof, at such holder's option, the right to exercise Subscription Rights and receive its *pro rata* share (based upon all Allowed General Unsecured Claims in the Class, including those electing to be treated under the preceding clause (a)) of, in the aggregate, not more than 50% of the New Common Stock, except to the extent that a holder of an Allowed General Unsecured Claim against any of the Debtors has agreed, in writing, to a less favorable (to such holder) treatment of such Claim.  Each holder of an Allowed General Unsecured Claim that is an Eligible Claimant qualified to receive the treatment referred to in clause (b) above must elect to receive such treatment under the Plan of Reorganization on or before the Subscription Expiration Date.

Subject to Section 5.19 hereof, each of the Investors, their respective Affiliates, and any assignees or purchasers of the Cerberus Claims (but not any assignees or purchasers of the Oaktree Claims) shall: (a) elect to participate in the Rights Offering on account of all of their Cerberus Claims and Oaktree Claims; and (b) waive their right to receive their Ratable Proportion of the GUC Distribution Assets with respect to the Cerberus Claims and Oaktree Claims. Notwithstanding anything to the contrary herein, any assignee or purchaser of Senior Subordinated Notes from either of the Investors shall not be required to elect to participate in the Rights Offering and shall not waive its rights to a Ratable Proportion of the GUC Distribution Assets on account of any General Unsecured Claim that is not a Cerberus Claim or Oaktree Claim; *provided*, that if an Eligible Claimant exercises its Subscription Rights, it shall be deemed to have waived and relinquished its rights to receive any other distribution under the Plan of Reorganization, including but not limited to, any distribution of GUC Distribution Assets.

### 4.5. *Convenience Claims (Class E)*.

Subject to Section 6.11 hereof, each holder of an Allowed Convenience Claim shall receive Cash in an amount equal to 20% of such Claim up to a maximum of $10,000.00 per holder of an Allowed Convenience Claim. Distributions to holders of Allowed Convenience Claims shall be funded and made as provided in Section 6.5 hereof. For purposes of treatment in Class E, all Allowed General Unsecured Claims of a claimant and its Affiliates shall be considered a single Claim, subject to payment of 20% thereof, up to a maximum of $10,000.00 per holder.

### 4.6. *Intercompany Claims (Class F)*.

On or prior to the Effective Date, each Allowed Intercompany Claim shall be extinguished by either offset, distribution, contribution of such Intercompany Claim, or otherwise (as, and to the extent, determined by the Debtors).

### 4.7. *Securities Litigation Claims (Class G)*.

The holders of the Security Litigation Claims shall receive no distribution of property under the Plan of Reorganization on account of such Claims.

### 4.8. *Laminates Equity Interests (Class H-1)*.

The holders of the Laminates Equity Interests shall receive no distribution of property under the Plan of Reorganization on account of such Equity Interests.

### 4.9. *Holdings Preferred Equity Interests (Class H-2)*.

The holders of the Holdings Preferred Equity Interests shall receive no distribution of property under the Plan of Reorganization on account of such Equity Interests.

### 4.10. *Other Equity Interests (Class H-3)*.

The holders of the Other Equity Interests shall be unimpaired and the Other Equity Interests shall remain outstanding without impairment of any legal, equitable, or contractual rights under the Plan of Reorganization.

## SECTION 5.   MEANS FOR IMPLEMENTATION

5.1.    *Acquisition Agreement*.

The Plan of Reorganization is based upon, and will implement, the Acquisition Agreement attached hereto as <u>Exhibit A</u>, and all terms and provisions of the Acquisition Agreement are incorporated herein by reference.  In the event of any inconsistency between the Plan of Reorganization and the Acquisition Agreement, the provisions of the Acquisition Agreement shall govern; *provided*, that with respect to the treatment of General Unsecured Claims and the amount and nature of the GUC Distribution Assets, the Plan of Reorganization shall govern.  The Debtors and the Buyer shall not amend the Acquisition Agreement, enter into any other agreement with respect thereto, or amend the Plan of Reorganization if such amendment or agreement (a) requires Bankruptcy Court approval pursuant to section 1127 of the Bankruptcy Code; or (b) such amendment or agreement adversely affects the Investors or the constituencies of the Steering Committee or the Creditors' Committee, in each of cases (a) and (b) without the prior written consent of such adversely affected party or its representative committee, which consent shall not be unreasonably withheld or delayed.

On July 1, 2003, the Bankruptcy Court entered the Approval Order approving the sale of the Debtors to the Buyer pursuant to the Acquisition Agreement and the Plan of Reorganization.  The Confirmation Order shall provide all authorizations necessary or required to consummate the acquisition of the Debtors on the terms set forth in the Acquisition Agreement.

5.2.    *Effect of Acquisition Agreement*.

Pursuant to the Acquisition Agreement and the Plan of Reorganization:

(a)    All Laminates Equity Interests and Holdings Preferred Equity Interests shall be cancelled and extinguished;

(b)    All of the other existing Equity Interests of the Debtors shall be unimpaired;

(c)    The Shares shall be authorized and issued by Reorganized Laminates;

(d)    The Subsidiary Shares shall be unimpaired;

(e)    The Investors shall (i) transfer $175,000,000.00 (the "<u>Purchase Price Amount</u>") to Newco in exchange for up to 100% of the New Common Stock, subject to dilution by reason of the Management Incentive Plan and the New Common Stock issued in connection with the Rights Offering; *provided*, that the Purchase Price Amount shall be reduced by the aggregate Subscription Price paid to Newco by the Eligible Claimants pursuant to the Rights Offering, and (ii) effectuate the Rights Offering with respect to such New Common Stock;

(f)    Newco shall transfer, or cause the Buyer to transfer, $175,000,000.00, the GUC Notes and the Subscription Rights to one or more of the Reorganized Debtors for distribution under the Plan of Reorganization in exchange for (i) the Shares and, if Buyer so desires, the Subsidiary Shares, and (ii) the Junior Notes; and

(g)    The Reorganized Debtors shall enter into the New Senior Secured Term Loan Facility.

### 5.3. *Restructuring Transactions*.

In order to effect the Acquisition Agreement and pursuant to the Plan of Reorganization, the Debtors and certain of their non-Debtor Affiliates shall implement a series of Restructuring Transactions in accordance with the Restructuring Transactions Letter. A blacklined draft of the Restructuring Transactions Letter comparing the amended and restated Restructuring Transactions Letter dated October 7, 2003, to the Restructuring Transactions Letter dated June 24, 2003 (which was an exhibit to the Plan of Reorganization filed on September 23, 2003), is annexed hereto as <u>Exhibit B</u>. These Restructuring Transactions, which in certain instances may take place prior to the Effective Date, are intended to consolidate and maximize the operating efficiencies and value of the Reorganized Debtors, while permitting the Debtors to successfully effectuate the Plan of Reorganization. The Restructuring Transactions may include the various payments, waivers, or capitalization of certain intercompany indebtedness, the contributions or purchase of assets, and certain corporate restructuring events that may include changes in corporate ownership, all between various debtors and non-Debtor Affiliates.

The nature, scope, timing, and amounts of the Restructuring Transactions may be subject to change, and the Debtors reserve the right to modify the Restructuring Transactions, which modifications will be identified in the Plan Supplement.

### 5.4. *Closing on the Acquisition Agreement*.

On the Effective Date, the closing of the Buyer's acquisition of Reorganized Laminates and the other Reorganized Debtors shall occur in accordance with the Acquisition Agreement and the Restructuring Transactions. The Reorganized Debtors shall receive the consideration provided for in the Acquisition Agreement and shall make the distributions provided hereunder on the terms and subject to the conditions contained in the Acquisition Agreement and the Plan of Reorganization.

### 5.5. *Deemed Substantive Consolidation of Debtors for Plan of Reorganization Purposes Only*.

Subject to the occurrence of the Effective Date, the Debtors shall be deemed substantively consolidated for the following purposes under the Plan of Reorganization: (a) all guaranties by any of the Debtors of the obligations of any other Debtor arising prior to the Effective Date shall be deemed cancelled so that any Claim against any Debtor and any guaranty thereof executed by any other Debtor and any joint and several liability of any of the Debtors shall be deemed to be one obligation of the deemed consolidated Debtors; (b) no distributions shall be made under the Plan of Reorganization on account of Intercompany Claims between or among the Debtors; and (c) each and every Claim filed or to be filed in the Reorganization Cases shall be deemed filed against the deemed consolidated Debtors and shall be deemed one Claim against, and obligation of, the deemed consolidated Debtors.

Such deemed substantive consolidation, however, shall not (other than for purposes related to funding distributions under the Plan of Reorganization and as set forth above in this Section) affect: (a) the legal and organizational structure of the Debtors; (b) guaranties, liens, and security interests granted prior to and after the commencement of the Reorganization Cases that are required to be maintained (i) in connection with executory contracts or unexpired leases that were entered into during the Reorganization Cases or that have been or will be assumed, (ii) pursuant to the Plan of Reorganization, or (iii) in connection with any financing entered into by the Debtors on the Effective Date, including but not limited to, the Exit Facilities, the GUC Notes, and the Junior Notes; (c) distributions out of any insurance policies or proceeds of such policies; and (d) the Secured Claim status of the Senior Lender Secured Claims and the Other Secured Claims.

Notwithstanding anything contained in the Plan of Reorganization to the contrary, the deemed substantive consolidation of the Debtors shall not have any effect on the Claims being reinstated and unimpaired, and the legal, equitable, and contractual rights to which the holders of any such Claims are entitled shall be left unaltered by the Plan of Reorganization.

### 5.6. *Termination of the DIP Agreement.*

On the Effective Date, all amounts owed under the DIP Agreement shall be indefeasibly paid in full in Cash by wire transfer or immediately available funds, the commitments thereunder terminated, and (a) the outstanding letters of credit issued under the DIP Agreement will be returned to the issuer undrawn and marked cancelled; and (b) new letters of credit will be provided pursuant to the Exit Facilities to replace the outstanding letters of credit issued under the DIP Agreement. Upon payment or satisfaction in full of all obligations under the DIP Agreement in accordance with the terms thereof, all liens and security interests granted to secure such obligations shall be deemed terminated and shall be of no further force and effect.

### 5.7. *Authorization of Shares, Subsidiary Shares, GUC Notes, and Junior Notes.*

The issuance of the Shares, Subsidiary Shares, GUC Notes, and Junior Notes is hereby authorized without the need for any further corporate action or action by the Debtors' shareholders or Boards of Directors.

### 5.8. *Exit Facilities.*

The Reorganized Debtors are authorized on and as of the Effective Date to enter into the Exit Facilities. The Exit Facilities shall be in form and substance, including as to size, reasonably acceptable to the Debtors, the Investors, the Steering Committee, and the Creditors' Committee.

### 5.9. *Intercreditor Agreement.*

The Reorganized Debtors are authorized on and as of the Effective Date to execute and deliver the Intercreditor Agreement.

### 5.10. *Escrow Agreement and Reserves.*

The Reorganized Debtors are authorized, on and as of the Effective Date, to execute and deliver the Escrow Agreement. Pursuant to the terms of the Escrow Agreement, the Disputed Unsecured Claims Reserve shall be held in trust for the holders of Allowed Unsecured Claims. The Reorganized Debtors shall pay the reasonable fees and expenses incurred by the Escrow Agent in performing its duties under the Escrow Agreement.

In addition, the Reorganized Debtors are authorized, on and as of the Effective Date, to create reserves with respect to Disputed Claims other than the Disputed Unsecured Claims Reserve.

### 5.11. *GUC Notes Indenture.*

The Reorganized Debtors and their Affiliates and subsidiaries that are obligors under the GUC Notes shall execute and deliver the GUC Notes Indenture. The Reorganized Debtors shall pay the reasonable fees and expenses incurred by the GUC Notes Indenture Trustee in performing its duties under the GUC Notes Indenture.

5.12.    *Cancellation of Existing Agreements*.

Except: (a) as otherwise expressly provided in the Plan of Reorganization; (b) with respect to executory contracts or unexpired leases that have been assumed by the Debtors; or (c) for purposes of evidencing a right to distributions under the Plan of Reorganization, on the Effective Date all the agreements and other documents evidencing the Claims or rights of any holder of a Claim against the Debtors shall be cancelled.

5.13.    *Cancellation of Holdings Preferred Equity Interests and Laminates Equity Interests*.

On the Effective Date, all Holdings Preferred Equity Interests and Laminates Equity Interests shall be cancelled and extinguished, the holders thereof shall not retain any rights thereunder, and such Equity Interests shall evidence no rights.

5.14.    *Boards of Directors*.

The initial Board of Directors of Reorganized Laminates shall consist of three members whose names shall be disclosed at or prior to the Confirmation Hearing. Each of the members of such initial Board of Directors shall serve a one-year term or until the first meeting of the shareholders of Reorganized Laminates, whichever occurs first. Each of the members of the initial Board of Directors of each of the Reorganized Debtors shall serve in accordance with such Reorganized Debtor's Amended Certificate of Incorporation and Amended Bylaws and applicable non-bankruptcy law.

5.15.    *Officers*.

The officers of the respective Debtors immediately prior to the Effective Date shall serve as the initial officers of the respective Reorganized Debtors on and after the Effective Date and in accordance with any employment agreement with the Reorganized Debtors and applicable non-bankruptcy law. After the Effective Date, the officers of the respective Reorganized Debtors shall be determined by their respective new Boards of Directors.

5.16.    *Corporate Action*.

Reorganized Laminates shall file its Amended Certificate of Incorporation with the Secretary of State of the State of Delaware on the Effective Date and an Amended Certificate of Incorporation for each of the other Reorganized Debtors that are corporations in the state of incorporation for such Reorganized Debtor. The Amended Certificates of Incorporation for each of the Reorganized Debtors shall prohibit the issuance of nonvoting equity securities, subject to further amendment of such Amended Certificates of Incorporation as permitted by applicable law. The Amended Bylaws shall be deemed adopted by the Boards of Directors of each of the Reorganized Debtors as of the Effective Date.

On the Effective Date, the adoption of the Amended Certificates of Incorporation and the Amended Bylaws shall be authorized and approved in all respects to be effective as of the Effective Date, in each case without further action under applicable law, regulation, order, or rule, including without limitation, any action by the directors or stockholders of the Debtors or the Reorganized Debtors. On the Effective Date, the cancellation of all Laminates Equity Interests and the Holdings Preferred Equity Interests, the authorization and issuance of the Shares, the Subsidiary Shares, the GUC Notes, and the Junior Notes, the entering into and effectuation of the Acquisition Agreement, the Exit Facilities, the GUC Notes Indenture, the Escrow Agreement, and the Intercreditor Agreement, and all other matters provided in the Plan of Reorganization involving the corporate structure of the Reorganized Debtors or

corporate action of the Reorganized Debtors shall be deemed to have occurred, be authorized, and be in effect from and after the Effective Date in each case without further action under applicable law, regulation, order, or rule, including without limitation, any action by the stockholders of the Debtors or the Reorganized Debtors.

### 5.17. *Management Incentive Plan*.

Newco shall adopt the Management Incentive Plan as of the Effective Date. The solicitation of votes on the Plan of Reorganization shall include and be deemed to be a solicitation of the holders of New Common Stock for approval of the Management Incentive Plan. Entry of the Confirmation Order shall constitute such approval. The Management Incentive Plan shall provide that Newco or its direct subsidiaries, as applicable, shall issue or reserve for issuance to certain key members of management of the Reorganized Debtors options to purchase a number of shares of either (a) New Common Stock; or (b) stock of Newco's direct subsidiaries equivalent to, and in substitution for, any shares of New Common Stock, in an amount not to exceed 10% of the shares of New Common Stock outstanding as of the Effective Date (including New Common Stock issued upon exercise of the Subscription Rights), or an equivalent amount of shares of Newco's direct subsidiaries in lieu thereof. Further details of the Management Incentive Plan shall be included in the Plan Supplement.

### 5.18. *Section 1145 Exemption*.

To the maximum extent provided by section 1145 of the Bankruptcy Code and applicable non-bankruptcy laws, the GUC Notes issued pursuant to the Plan of Reorganization will be exempt from registration under the Securities Act. To the maximum extent permitted by applicable securities law, the Exit Facilities shall be exempt from registration under the Securities Act.

### 5.19. *Oaktree Cash*.

Oaktree shall contribute the Oaktree Cash to the GUC Distribution Assets for distribution to General Unsecured Creditors in accordance with Section 4.4 hereof.

## SECTION 6. DISTRIBUTIONS

### 6.1. *Record Date for Distributions*.

As of the close of business on the Confirmation Date, the various transfer registers for each of the Classes of Claims and Equity Interests as maintained by the Debtors or their respective agents shall be deemed closed, and there shall be no further changes in the record holders of any of the Claims or Interests. The Debtors shall have no obligation to recognize any transfer of the Claims or Equity Interests occurring on or after such date.

### 6.2. *Date of Distributions*.

Unless otherwise provided herein, all initial distributions and deliveries to be made hereunder shall be made on the Effective Date or as soon thereafter as is practicable. Notwithstanding the foregoing, subsequent distributions, as the Reorganized Debtors shall determine after consultation with the Reconstituted Committee, will be made quarterly in accordance with the terms set forth in the Plan of Reorganization, unless the administrative costs of making such distributions would be excessive in comparison to the amounts to be distributed.

In the event that any payment or act under the Plan of Reorganization is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### 6.3. *Postpetition Interest On Claims*.

Unless expressly provided in the Plan of Reorganization, the Confirmation Order, the orders approving the DIP Agreement, or any contract, instrument, release, settlement, or other agreement entered into in connection with the Plan of Reorganization, or required by applicable bankruptcy law, postpetition interest shall not accrue on or after the Petition Date on account of any Claim.

### 6.4. *Distributions to Class D*.

For the purpose of calculating the Ratable Proportion of the GUC Distribution Assets to be distributed to the holder of an Allowed General Unsecured Claim, the Reorganized Debtors shall include all Disputed Claims in the aggregate amount of all Class D Claims either in the amounts asserted by the holders of such Claims or as estimated by the Bankruptcy Court (and exclude the Cerberus Claims, the Oaktree Claims, and the Claims of the Eligible Claimants that participate in the Rights Offering). Subject to Sections 6.2 and 7.4 hereof, on the Effective Date or as soon thereafter as practicable, and on each subsequent distribution date that follows a quarter during which a Disputed General Unsecured Claim becomes an Allowed General Unsecured Claim pursuant to a Final Order, distributions shall be made to holders of Allowed General Unsecured Claims. For purposes of such distributions, the Reorganized Debtors shall recalculate the Ratable Proportion for each holder of an Allowed Claim in Class D (excluding the Cerberus Claims, the Oaktree Claims, and the Claims of the Eligible Claimants that participate in the Rights Offering), based on the aggregate amount of Allowed Claims in such Class on such date, and instruct the Disbursing Agent to make subsequent distributions of the GUC Distribution Assets from the Disputed Unsecured Claims Reserve to the holders of Allowed Claims in Class D. Subject to Section 7.1 hereof, for purposes of distributions of the GUC Distribution Assets to holders of Claims in Class D, the Debtors or the Reorganized Debtors, as applicable, at their option and after consultation with the Creditors' Committee or the Reconstituted Committee, as applicable, may estimate the amount to include for unliquidated Claims or seek an order from the Bankruptcy Court determining such estimates. The holders of Disputed Claims that become Allowed General Unsecured Claims subsequent to the Effective Date and the initial distribution of the GUC Distribution Assets shall receive GUC Distribution Assets in the amount that such holders would have received on the Effective Date, without any post-Effective Date interest on such Claims. Section 9 hereof describes the distributions of New Common Stock to Eligible Claimants in Class D pursuant to the Rights Offering.

### 6.5. *Distributions to Class E*.

Subject to Sections 6.2 and 7.4 hereof, distributions of Cash to holders of Allowed Convenience Claims shall be made on the later of the Effective Date or 10 days after each such Claim becomes an Allowed Claim. For purposes of treatment in Class E, all Allowed General Unsecured Claims of a creditor and its Affiliates shall be considered a single claim, subject to payment of 20% thereof up to a maximum of $10,000.00 per holder.

### 6.6. *Disbursing Agent*.

All distributions under the Plan of Reorganization shall be made by the applicable Reorganized Debtor as Disbursing Agent or such other entity or entities as may be designated by the applicable Reorganized Debtor as Disbursing Agent. A Disbursing Agent shall not be required to give

any bond, surety, or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court; and, in the event that a Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the applicable Reorganized Debtor and without liability to any party, except for willful misconduct.

### 6.7. *Rights and Powers of Disbursing Agent*.

(a) *Powers of the Disbursing Agent.* The Disbursing Agent shall be empowered to (i) effect all actions and execute and deliver all agreements, instruments, and other documents necessary to perform its duties under the Plan of Reorganization, (ii) make all distributions contemplated hereby, (iii) employ professionals to represent it with respect to its responsibilities, and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan of Reorganization, or as the Disbursing Agent may deem necessary and proper to implement the provisions hereof.

(b) *Expenses Incurred On or After the Effective Date.* Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including without limitation, taxes) and any reasonable compensation and expense reimbursement claims (including without limitation, reasonable attorneys' fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtors.

### 6.8. *Setoffs*.

The Reorganized Debtors may, but shall not be required to, set off against any Claim (for purposes of determining the Allowed amount of such Claim on which distribution shall be made), any claims of any nature whatsoever that the Reorganized Debtors may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or Reorganized Debtors of any such claim the Reorganized Debtors may have against the holder of such Claim; *provided,* that in the event the Reorganized Debtors seek to exercise such setoff rights against the holder of a Claim that is a debtor in a case under the Bankruptcy Code, the Reorganized Debtors shall comply with the requirements of the Bankruptcy Code, including seeking relief from the automatic stay.

### 6.9. *Delivery of Distributions*.

Subject to Bankruptcy Rule 9010, all distributions to any holder of an Allowed Claim, except a holder of an Allowed Senior Lender Secured Claim or a Senior Subordinated Notes Claim, shall be made at the address of such holder as set forth on the Schedules filed with the Bankruptcy Court or on the books and records of the Debtors or their agents, unless the Debtors have been notified in writing of a change of address, including without limitation, by the filing of a proof of claim or interest by such holder that contains an address for such holder different from the address reflected on such Schedules for such holder. All distributions to any holder of an Allowed Senior Lender Secured Claim shall be made to the New Administrative Agent. All distributions to any holder of an Allowed General Unsecured Claim on account of the Senior Subordinated Notes shall be made to the Indenture Trustee. In the event that any distribution to any holder is returned as undeliverable, the Disbursing Agent, the New Administrative Agent, or the Indenture Trustee, as applicable, shall use reasonable efforts to determine the current address of such holder, but no distribution to such holder shall be made unless and until the Disbursing Agent, the New Administrative Agent, or the Indenture Trustee has determined the then current address of such holder, at which time such distribution shall be made to such holder without interest; *provided,* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the date of distribution. After such date, all unclaimed property or

interest in property shall revert to the applicable Reorganized Debtor, and the Claim of any other holder to such property or interest in property shall be discharged and forever barred, except that any unclaimed property that constitutes GUC Distribution Assets shall be distributed to the Escrow Agent as the Disbursing Agent for distribution to holders of Allowed Unsecured Claims in accordance with the terms of the Plan or Reorganization.

### 6.10. *Manner of Payment Under the Plan of Reorganization*.

(a)     At the option of the Debtors or the Reorganized Debtors, as applicable , any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements.

(b)     All distributions of GUC Distribution Assets and Subscription Rights to holders of Class D Claims under the Plan of Reorganization shall be made by or on behalf of the applicable Reorganized Debtor in accordance with the Restructuring Transactions. Where the applicable Reorganized Debtor is a subsidiary of Reorganized Formica, Reorganized Formica shall be treated as making a capital contribution, either directly or indirectly, to the applicable Reorganized Debtor of the GUC Distribution Assets and Subscription Rights to be distributed on such Reorganized Debtor's behalf (other than the GUC Cash distributed from such Reorganized Debtor's own funds).

### 6.11. *No Fractional Shares or Fractional Subscription Rights*.

No fractional shares of New Common Stock or Cash in lieu thereof shall be distributed. For purposes of distribution, fractional shares of New Common Stock shall be rounded down to the next whole number or zero, as applicable.

No fractional Subscription Rights or Cash in lieu thereof shall be distributed. For purposes of distribution, fractional Subscription Rights shall be rounded down to the next whole number or zero, as applicable, pursuant to the terms set forth in Section 9 hereof.

### 6.12. *Minimum Distributions*.

No distribution of less than $100.00 shall be made by the Reorganized Debtors to any holder of a Claim unless a request therefor is made in writing to the Reorganized Debtors.

### 6.13. *Distributions After Effective Date*.

Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

### 6.14. *Allocation of Plan of Reorganization Distributions Between Principal and Interest*.

Other than in respect of the distributions to be made to the Senior Secured Lenders, to the extent that any Allowed Claim entitled to a distribution under the Plan of Reorganization is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated to the principal amount (as determined for federal income tax purposes) of the Claim first, and then to accrued but unpaid interest.

6.15.    ***Withholding and Reporting Requirements***.

In connection with the consummation of the Plan of Reorganization, the Debtors, the Reorganized Debtors and the Disbursing Agent(s), as the case may be, shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements.

## SECTION 7.    PROCEDURES FOR TREATING DISPUTED CLAIMS

7.1.    ***Objections to Claims***.

Except insofar as a Claim is Allowed hereunder, the Debtors and the Reorganized Debtors shall be entitled to object to Claims; *provided*, that if the Reconstituted Committee requests that the Reorganized Debtors object to certain General Unsecured Claims and the Reorganized Debtors decline such request, the Reconstituted Committee shall be entitled to object to and/or seek the estimation of such Claim, other than Claims set forth in Schedule 5.12(f) of the Acquisition Agreement, which Claims the Debtors or the Reorganized Debtors, as applicable, shall object to and the prosecution or settlement of which shall be solely the right of the Debtors or the Reorganized Debtors, as applicable, in accordance with the terms and conditions of Section 5.12(f) of the Acquisition Agreement; *provided,* that the Reorganized Debtors shall also procure the consent of the Reconstituted Committee with respect to any consent of the Buyer required by Section 5.12(f) of the Acquisition Agreement and the Reorganized Debtors and the Buyer shall not amend Schedule 5.12(f) of the Acquisition Agreement without having first procured the prior consent of the Reconstituted Committee, which consent shall not be unreasonably withheld or delayed.  Any objections to Claims shall be served and filed on or before the later of (a) 60 days after the Effective Date; and (b) such later date as may be fixed by the Bankruptcy Court.

7.2.    ***No Distributions Pending Allowance***.

(a)    *General.*  Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

(b)    *Prepetition Litigation Claims*.  All prepetition Litigation Claims not previously Allowed by Final Order are Disputed Claims.  Subject to the rights of the Debtors and the Reorganized Debtors under Section 7.3 hereof, prepetition Litigation Claims as to which proofs of claim were timely filed in the Reorganization Cases shall be determined and liquidated in the Bankruptcy Court unless the Debtors or the Reorganized Debtors elect, or the Bankruptcy Court orders, that such Claim be determined and liquidated in the administrative or judicial tribunal in which it is pending on the Confirmation Date or, if no such action was pending on the Confirmation Date, in any administrative or judicial tribunal of appropriate jurisdiction, or in accordance with any alternative dispute resolution or similar proceeding as same may be approved by order of a court of competent jurisdiction.  Any prepetition Litigation Claim determined and liquidated (i) pursuant to a judgment obtained in accordance with this Section 7.2 and applicable non-bankruptcy law that is no longer subject to appeal or other review, or (ii) in any alternative dispute resolution or similar proceeding as same may be approved by order of a court of competent jurisdiction, shall be deemed to be an Allowed Claim in Class D or Class E, as applicable, in such liquidated amount and satisfied in accordance with the Plan of Reorganization; *provided*, that to the extent that a Litigation Claim is Allowed and is covered under any of the Debtors' insurance policies, such Claim shall be paid from the insurance proceeds available to satisfy such liquidated amount.  Nothing contained in this Section 7.2 shall impair the Debtors' and Reorganized Debtors' right to seek estimation of any and all Litigation Claims in a court or courts of competent jurisdiction or constitute or be deemed a waiver of any claim, right, or cause of action that the Debtors may have against any person in connection

with or arising out of any Litigation Claim, including without limitation, any rights under section 157(b) of title 28 of the United States Code.

### 7.3. *Estimation of Claims*.

The Debtors and the Reorganized Debtors may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code or otherwise regardless of whether the Debtor or Reorganized Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors or Reorganized Debtors may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

### 7.4. *Distributions Withheld for Disputed Unsecured Claims*.

(a)     *Disputed Unsecured Claims Reserve.* On the Effective Date or as soon thereafter as practicable, the Reorganized Debtors shall deposit in trust in the Disputed Unsecured Claims Reserve an amount of Cash and GUC Notes necessary to satisfy any distributions that would be made to holders of Disputed Claims in Class D and Class E if such Claims were to become Allowed Claims. Pursuant to the terms of the Escrow Agreement, the Disputed Unsecured Claims Reserve shall be completely separate and apart from the Reorganized Debtors' operating funds.

All Cash and Cash equivalents held in the Disputed Unsecured Claims Reserve shall be used to satisfy any taxes of such Disputed Unsecured Claims Reserve.

(b)     *Distributions Upon Allowance of Disputed Claims*. The holder of a Disputed Claim in Class D and Class E that becomes an Allowed Claim subsequent to the Effective Date shall receive distributions of Cash and GUC Notes, as applicable, from the Disputed Unsecured Claims Reserve on the next distribution date that follows the quarter during which such Disputed Claim becomes an Allowed Claim pursuant to a Final Order. Such holder will receive a distribution of Cash and GUC Notes that it would have received if its Claim was Allowed on the Effective Date. In the case of holders of Claims in Class D, such holders will receive additional Cash in an amount equal to the interest accrued on the GUC Notes following the Effective Date, reduced by an amount equal to such holder's proportionate share of any taxes imposed by any governmental unit with respect to income generated by the property held by the Disputed Unsecured Claims Reserve.

(c)     *Surplus Distributions to Holders of Allowed Claims*. To the extent that a Disputed Unsecured Claim is not Allowed or becomes an Allowed Claim in an amount less than the amount of the Disputed Unsecured Claim set forth in the proof of claim, or as previously estimated by the Bankruptcy Court, the excess of the amount of Cash and GUC Notes that would have been distributed under Section 7.4(b) hereof if the Claim had been Allowed in an amount equal to the Disputed Unsecured Claim amount over the amount of Cash and GUC Notes actually distributed on account of such Disputed Claim, shall constitute surplus available for distributions to holders of Allowed Claims in Class D (the "Surplus Distributions"). The Surplus Distributions shall be distributed by the Escrow Agent to the

holders of Allowed Claims in such Class pursuant to the Plan of Reorganization; *provided*, that the Escrow Agent shall not be under any obligation to make any Surplus Distributions of Cash and GUC Notes on a subsequent distribution date unless the amount of Cash and GUC Notes to be distributed aggregates $250,000.00 or more, unless the distribution is the last distribution to be made under the Plan of Reorganization.

(d)     *Tax Treatment of Disputed Claims Reserve*.  Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary (including the issuance of applicable Treasury Regulations, the receipt by the Escrow Agent of a private letter ruling if the Escrow Agent so requests one, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the Escrow Agent), the Escrow Agent shall (i) treat the Disputed Unsecured Claims Reserve as a discrete trust for federal income tax purposes, consisting of separate and independent shares to be established in respect of each Disputed General Unsecured Claim, in accordance with the trust provisions of the Tax Code (Section 641 *et seq*.), and (ii) to the extent permitted by applicable law, report consistently for state and local income tax purposes.  In addition, all parties (including holders of Disputed Unsecured Claims in Class D and Class E) shall report consistently with such treatment.

(e)     *Expedited Determination of Taxes*.  The Escrow Agent may request an expedited determination of taxes of the Disputed Unsecured Claims Reserve under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Disputed Unsecured Claims Reserve for all taxable periods through the dissolution of the Disputed Unsecured Claims Reserve.

### 7.5.     *Distributions Relating to Disputed Claims*.

At such time as a Disputed Claim becomes an Allowed Claim, the Disbursing Agent shall distribute to the holder of such Claim, such holder's Ratable Proportion of the property distributable with respect to the Class in which such Claim belongs.  To the extent that all or a portion of a Disputed Claim in any Class is disallowed, the holder of such Claim shall not receive any distribution on account of the portion of such Claim that is disallowed and any property withheld pending the resolution of such Claim shall be reallocated *pro rata* to the holders of Allowed Claims in the same Class; *provided*, that any Cash held for a Disputed Class E Claim that is disallowed, in whole or in part, shall be redistributed by the Escrow Agent to holders of Allowed General Unsecured Claims in accordance with Section 7.4(c) hereof.

### 7.6.     *Preservation of Rights to Settle Claims*.

In accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims, rights, causes of action, suits, and proceedings, whether in law or in equity, whether known or unknown, that the Debtors or their estates may hold against any person or entity without the approval of the Bankruptcy Court, subject to the terms of Section 7.1 hereof, the Confirmation Order, the Exit Facilities, and any contract, instrument, release, indenture, or other agreement entered into in connection with the Plan of Reorganization; *provided*, that the Reorganized Debtors may not settle or compromise Claims, rights, causes of action, suits, or proceedings without first consulting with the Reconstituted Committee.  The Reorganized Debtors or their successor(s) may pursue such retained claims, rights, or causes of action, suits, or proceedings as appropriate, in accordance with the best interests of the Reorganized Debtors or their successor(s) who hold such rights.

### 7.7.     *Disallowed Claims*.

All Claims held by persons or entities against whom any Debtor or Reorganized Debtor has commenced a proceeding asserting a cause of action under sections 542, 543, 544, 545, 547, 548, 549,

and/or 550 of the Bankruptcy Code, shall be deemed "disallowed" Claims pursuant to section 502(d) of the Bankruptcy Code and holders of such Claims shall not be entitled to vote to accept or reject the Plan of Reorganization. Claims that are deemed disallowed pursuant to this Section shall continue to be disallowed for all purposes until the avoidance action against such party has been settled or resolved by Final Order and any sums due to the Debtors or the Reorganized Debtors from such party have been paid.

## SECTION 8.   EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 8.1.   *General Treatment*.

Pursuant to sections 365(a) and 1123(b)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, all executory contracts (including any option or warrant to purchase common stock of any of the Debtors to the extent such option or warrant is determined not to be an Equity Interest) and unexpired leases to which any of the Debtors are parties shall be deemed assumed as of the Effective Date, except for an executory contract or unexpired lease that: (a) has been assumed or rejected pursuant to Final Order of the Bankruptcy Court; (b) is specifically designated or generally described on Schedule 8.1 hereto as a contract or lease to be rejected; (c) is the subject of a separate motion under section 365 of the Bankruptcy Code by the Debtors filed prior to the Effective Date; or (d) is subject to Sections 8.4 or 8.5 hereof. For purposes hereof, each executory contract and unexpired lease listed or generally described on Schedule 8.1 hereto that relates to the use or occupancy of real property shall include all (x) modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument, or other document is listed on Schedule 8.1 hereto; and (y) executory contracts or unexpired leases appurtenant to the premises listed on Schedule 8.1 hereto, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, usufructs, reciprocal easement agreements, vault, tunnel or bridge agreements or franchises, and any other interests in real estate or rights *in rem* relating to such premises to the extent any of the foregoing are executory contracts or unexpired leases, unless any of the foregoing agreements are specifically rejected. A non-Debtor party to an executory contract or unexpired lease that is being rejected hereunder may request that the Debtors assume such contract or lease by sending written notice to the Debtors, which notice shall include a waiver of any defaults (including any payment defaults) and any right to any cure payment under such contract or lease. The Debtors may (but need not) assume such contract or lease without further action of the Bankruptcy Court. In addition, at all times prior to the Effective Date, the Debtors shall retain their right to amend Schedule 8.1 hereto and thereby assume or reject any of the executory contracts or unexpired leases, as applicable. Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute approval of the assumption of all executory contracts or unexpired leases not previously assumed or rejected and not appearing on Schedule 8.1 hereto to be rejected, not the subject of a separate motion under section 365 of the Bankruptcy Code by the Debtors filed prior to the Effective Date, and not otherwise assumed pursuant to Sections 8.4 and 8.5 hereof.

### 8.2.   *Cure of Defaults*.

Except to the extent that different treatment has been agreed to by the non-Debtor party or parties to any executory contract or unexpired lease to be assumed pursuant to Section 8.1 hereof, the Debtors shall, pursuant to the provisions of sections 1123(a)(5)(G) and 1123(b)(2) of the Bankruptcy Code and consistent with the requirements of section 365 of the Bankruptcy Code, within 60 days after the Confirmation Date, file a pleading with the Bankruptcy Court listing the cure amounts of all executory contracts and unexpired leases to be assumed. The parties to such executory contracts and unexpired leases to be assumed by the Debtors shall have 30 days to object to the cure amounts listed by the Debtors. If there are any objections filed, the Bankruptcy Court shall hold a hearing. In the event the

Bankruptcy Court determines that the cure amount is greater than the cure amount listed by the Debtors, the Reorganized Debtors may elect to reject the contract or unexpired lease and not pay such greater cure amount.

### 8.3. *Rejection Claims*.

In the event that the rejection of an executory contract or unexpired lease by any of the Debtors pursuant to the Plan of Reorganization results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Debtors, or their respective properties or interests in property as agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for the Debtors or Reorganized Debtors on or before the date that is 30 days after the earlier of the Effective Date or the date of such rejection; *provided,* that if such rejection occurs pursuant to the last sentence of Section 8.2 hereof, the last date to file such a Claim shall be 30 days after such rejection.

### 8.4. *Survival of Indemnification Obligations*.

Any obligations of the Debtors pursuant to their corporate charters and bylaws or agreements entered into any time prior to the Effective Date to indemnify current directors, officers, agents, and/or employees, and former directors, officers, agents, and/or employees who acted in such capacities after the Petition Date, with respect to all present and future actions, suits, and proceedings against the Debtors or such directors, officers, agents, and/or employees, based upon any act or omission for or on behalf of the Debtors shall not be discharged or impaired by confirmation of the Plan of Reorganization. Such obligations shall be deemed and treated as executory contracts pursuant to the Plan of Reorganization and shall continue in full force and effect as obligations of the Reorganized Debtors.

### 8.5. *Survival of Other Employment Arrangements*.

All prepetition employee severance, employment contracts, benefit, compensation, and similar plans and programs shall be deemed and treated as executory contracts pursuant to the Plan of Reorganization and shall continue in full force and effect as obligations of the Reorganized Debtors, except (a) to the extent that they have been previously rejected or are rejected hereunder; and (b) as set forth in the Acquisition Agreement.

### 8.6. *Insurance Policies*.

Except to the extent set forth in the Acquisition Agreement, all insurance policies pursuant to which the Debtors have any obligations in effect as of the date of the Confirmation Order shall be deemed and treated as executory contracts pursuant to the Plan of Reorganization and shall be assumed by the respective Debtors and Reorganized Debtors and shall continue in full force and effect. All other insurance policies shall revest in the Reorganized Debtors.

The Reorganized Debtors are hereby authorized to obtain run-off director and officer liability insurance and other related insurance (collectively, "Tail Coverage") for a minimum term of six years of coverage, effective as of the Effective Date; *provided*, that the premiums for such Tail Coverage shall not exceed $4,500,000.00 in the aggregate.

8.7.    ***PBGC Claims***.

It is anticipated that the PBGC Claims shall be voluntarily withdrawn, effective as of the Effective Date, as a result of the assumption of all obligations under the Formica Corporation Employee Retirement Plan (the "Pension Plan") by Reorganized Wildon Industries, Inc. The Pension Plan shall not be otherwise affected by the Reorganization Cases.

## SECTION 9.    THE RIGHTS OFFERING

9.1.    ***Issuance of Subscription Rights***.

The Subscription Rights shall entitle Eligible Claimants who hold Allowed General Unsecured Claims the right to purchase up to 50% of the authorized and issued shares of New Common Stock (before dilution of the New Common Stock pursuant to the Management Incentive Plan) at a price of $50.00 per share pursuant to the terms and conditions of this Section 9. Each Eligible Claimant as of the Subscription Record Date shall receive its *pro rata* share (based upon all Allowed General Unsecured Claims in the Class, including those electing to receive GUC Distribution Assets) of the Subscription Rights as set forth in this Section. A Subscription Form will be distributed to each Eligible Claimant together with a ballot to vote on the Plan of Reorganization.

The remaining 50% of the New Common Stock and any shares of New Common Stock not subscribed pursuant to the Rights Offering will be purchased by the Investors.

9.2.    ***Subscription Period***.

The Rights Offering shall commence on the Subscription Commencement Date and shall expire on the Subscription Expiration Date. Each Eligible Claimant intending to participate in the Rights Offering must certify that it is an Eligible Claimant and affirmatively elect to exercise the Subscription Rights on or prior to the Subscription Expiration Date.

9.3.    ***Subscription Purchase Price***.

The Subscription Purchase Price for Subscription Rights will be $50.00 per share of New Common Stock, payable in Cash.

9.4.    ***Exercise of Subscription Rights***.

In order to exercise the Subscription Rights, each Eligible Claimant entitled to Subscription Rights must: (a) return a duly completed Subscription Form to the Subscription Agent so that such form is received by the Subscription Agent on or before the Subscription Expiration Date; and (b) pay to the Subscription Agent on or before the Subscription Expiration Date, Cash in an amount equal to such holder's Subscription Purchase Price, such payment to be made either by wire transfer to the Subscription Agent in accordance with the wire instructions set forth on the Subscription Form or by bank or cashier's check delivered to the Subscription Agent along with the Subscription Form. If, on or prior to the Subscription Expiration Date, the Subscription Agent for any reason does not receive from a given holder both a duly completed Subscription Form and immediately available funds in an amount equal to such holder's Subscription Purchase Price, such holder shall be deemed to have relinquished and waived its right to participate in the Rights Offering. The Subscription Form also certifies that such Eligible Claimant is a "qualified institutional buyer" as defined in paragraph (a) of Rule 144A of the Securities Act in order to permit such Eligible Claimant to participate in the Rights Offering. The payments made in accordance with the Rights Offering shall be deposited and held by the Subscription Agent in a trust

account, escrow account, or similar segregated account or accounts which shall be separate and apart from the Subscription Agent's general operating funds and any other funds subject to any cash collateral arrangements and which segregated account or accounts will be maintained for the purpose of holding the money for administration of the Rights Offering until the Effective Date, or such other later date, at the option of the Reorganized Debtors, but not later than 20 days after the Effective Date. Notwithstanding the foregoing, in order for a holder of Senior Subordinated Notes in Class D to exercise its Subscription Rights, such holder must provide its instruction to its bank, broker, or other nominee or to its agent. The bank, broker, or other nominee or its agent, in turn, must then convey the instruction on a master Subscription Form, and arrange for the proper payment either through the Depository Trust Company ("DTC"), or, if DTC is unable to act as intermediary for subscription instructions and payments, by following the payment instructions outlined above.

All Eligible Claimants, including without limitation, the Investors, who exercise their Subscription Rights thereby waive their rights to any other distribution on account of the Claim for which such Subscription Rights were granted, and such Claims shall be terminated and cancelled.

9.5.    *Transfer of Subscription Rights; Revocation*.

The Subscription Rights may be sold, transferred, or assigned by a holder thereof to any other Eligible Claimant. Additionally, once a holder of Subscription Rights has properly exercised its Subscription Rights, such exercise shall not be permitted to be revoked. If a holder of a Disputed General Unsecured Claim that would be an Eligible Claimant except for the fact that such General Unsecured Claim is a Disputed Claim has obtained an order of the Bankruptcy Court estimating its General Unsecured Claim or otherwise entered into an agreement with the Debtors for the purpose of participating in the Rights Offering prior to the Subscription Expiration Date, such holder shall be entitled to elect to participate in the Rights Offering. However, only holders of Allowed Claims that are Eligible Claimants shall be entitled to subscribe to and exercise rights under the Rights Offering. If, as a result of subsequent allowances of General Unsecured Claims for purposes of participation in the Rights Offering, more than all of the shares of New Common Stock subject to the Rights Offering have been purchased as a result of the exercise of the Subscription Rights, each Exercising Claimant, including without limitation, the Investors, shall be cut back *pro rata* based on the number of shares purchased by such Exercising Claimant in the Rights Offering, and the difference between the price paid by such Exercising Claimant and the adjusted Subscription Purchase Price shall be refunded to such Exercising Claimant, without interest, as soon as practicable after the Effective Date.

9.6.    *Distribution of New Common Stock*.

On, or as soon as practicable after, the Effective Date, the Disbursing Agent shall distribute the New Common Stock purchased by each Exercising Claimant to such Exercising Claimant.

9.7.    *Disputed Claims*.

For all purposes of this Section 9, each Eligible Claimant that holds an Allowed General Unsecured Claim or a Disputed General Unsecured Claim that is liquidated in an amount for purposes of participating in the Rights Offering by an agreement with the Debtors or an order of the Bankruptcy Court shall be eligible to make an election to subscribe to the Rights Offering. Such holders shall be entitled to participate in the Rights Offering to the extent of the Allowed Amount of the Claim or the amount ordered by the Bankruptcy Court or agreed to by the Debtors.

9.8. ***No Interest***.

In the event the Subscription Purchase Price is repaid to the entity making such payment, no interest shall be paid thereon.

9.9. ***Validity of Exercise of Subscription Rights***.

All questions concerning the timelines, viability, form, and eligibility of any exercise of Subscription Rights shall be determined by the Investors, whose good faith determinations shall be final and binding. The Investors, in their sole discretion reasonably exercised in good faith, may waive any defect or irregularity, or permit a defect or irregularity to be corrected within such times as they may determine, or reject the purported exercise of any Subscription Rights. Subscription Forms shall be deemed not to have been received or accepted until all irregularities have been waived or cured within such time as the Investors determine in their sole discretion reasonably exercised in good faith. Neither the Investors nor the Subscription Agent shall be under any duty to give notification of any defect or irregularity in connection with the submission of Subscription Forms or incur any liability for failure to give such notification.

## SECTION 10. CONDITIONS PRECEDENT TO THE CONFIRMATION DATE AND EFFECTIVE DATE

10.1. ***Conditions Precedent to the Confirmation Date***.

The occurrence of the Confirmation Date is subject to satisfaction of the following conditions precedent:

(a)     The Approval Order shall be a Final Order;

(b)     The Acquisition Agreement shall be in full force and effect and shall have not been terminated;

(c)     The Confirmation Order shall be in form and substance reasonably acceptable to the Debtors, the Investors, the Creditors' Committee, the Steering Committee, and the lenders under the New Senior Secured Revolving Loan Facility; and

(d)     All documents included in the Plan Supplement shall be in form and substance reasonably acceptable to the Debtors, the Investors, the Creditors' Committee, the Steering Committee, and the lenders under the New Senior Secured Revolving Loan Facility.

10.2. ***Conditions Precedent to the Effective Date***.

The occurrence of the Effective Date is subject to satisfaction of the following conditions precedent:

(a)     The Clerk of the Bankruptcy Court shall have entered the Confirmation Order, and the Confirmation Order shall have become a Final Order;

(b)     The statutory fees owing to the U.S. Trustee shall have been paid in full;

(c)     All conditions to closing under the Acquisition Agreement shall have been satisfied or waived, including but not limited to, the applicable waiting period under the Hart-Scott-

Rodino Antitrust Improvements Act of 1976, as amended, and the closing under the Acquisition Agreement shall occur;

(d)      The conditions precedent to the effectiveness of the Exit Facilities and the GUC Notes Indenture shall have been satisfied or waived by the parties thereto and the Reorganized Debtors shall have access to funding under the terms of the Exit Facilities;

(e)      All actions and documents necessary to implement the provisions of the Plan of Reorganization, including without limitation, execution versions of the documents that comprise the Plan Supplement, to be effectuated on or prior to the Effective Date shall have been effected or executed and delivered, as applicable in a form reasonably satisfactory to the Debtors, the Reorganized Debtors, the Investors, the Creditors' Committee, the Steering Committee, and the lenders under the New Senior Secured Revolving Loan Facility;

(f)      Each of the Certificates of Incorporation, Certificates of Formation, bylaws, and other organizational documents of the Buyer, Newco, the Reorganized Debtors and any entity formed in connection with the transactions contemplated by the Plan of Reorganization shall be in form and substance reasonably satisfactory to the Reorganized Debtors, the Steering Committee, the Investors, and the Creditors' Committee and shall have been filed, effected, or executed, as required;

(g)      All amounts owed under the DIP Agreement shall have been indefeasibly paid in full in Cash by wire transfer of immediately available funds, the commitments thereunder terminated, and (i) the outstanding letters of credit issued under the DIP Agreement will be returned to the issuer undrawn and marked cancelled, and (ii) new letters of credit will be provided pursuant to the Exit Facilities to replace the outstanding letters of credit issued under the DIP Agreement;

(h)      The GUC Notes shall have been executed and delivered by all parties obligated thereunder;

(i)      The Junior Notes shall have been executed and delivered by all parties thereunder;

(j)      The New Common Stock shall have been duly authorized and, with the occurrence of the Effective Date, shall be validly issued and outstanding;

(k)      The GUC Distribution Assets shall have been transmitted to the Disbursing Agent as provided in Section 6 hereof and the property comprising the Disputed Unsecured Claims Reserve shall have been deposited into the escrow account in accordance with Section 7.4(a) hereof;

(l)      All authorizations, consents, and regulatory approvals required in connection with the consummation of the Plan of Reorganization shall have been obtained and not revoked;

(m)      Subject to the requirements of the Bankruptcy Code and the Bankruptcy Court, all due but unpaid fees and expenses of the professionals retained by the Debtors, the Creditors' Committee, and the Steering Committee shall have been paid in full;

(n)      The Oaktree Letter shall have been delivered to counsel for the Creditors' Committee;

(o)      Oaktree shall have contributed the Oaktree Cash to the GUC Distribution Assets for distribution to General Unsecured Creditors in accordance with Section 4.4 hereof; and

(p)     The Effective Date shall occur on or before March 31, 2004.

10.3.   *Waiver of Conditions Precedent.*

Each of the conditions precedent in Sections 10.1(c) and (d) and 10.2(c) through (p) hereof may be waived, in whole or in part, by the Debtors, the Steering Committee, the Investors, and the Creditors' Committee.  Any such waiver of the conditions precedent in Sections 10.1(c) and (d) and 10.2(c) through (p) hereof may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan of Reorganization.

## SECTION 11.   EFFECT OF CONFIRMATION

11.1.   *Revesting of Assets.*

Upon the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the Debtors' bankruptcy estates (except the Disputed Unsecured Claims Reserve) shall revest in the Reorganized Debtors, free and clear of all Claims, liens, encumbrances, charges, and other interests, except with respect to liens granted pursuant to the Exit Facilities, and as otherwise provided herein or in the Confirmation Order.  The Debtors may operate their businesses and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code, except as provided herein.

11.2.   *Discharge of Claims and Termination of Equity Interests.*

Except as otherwise provided herein or in the Confirmation Order, the rights afforded in the Plan of Reorganization and the payments and distributions to be made hereunder shall discharge all existing debts and Claims, and terminate the Laminates Equity Interests and the Holdings Preferred Equity Interests, of any kind, nature, or description whatsoever against or in the Debtors, the Reorganized Debtors, or any of their assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code.  Except as provided in the Plan of Reorganization, upon the Effective Date, all existing Claims against the Debtors and the Laminates Equity Interests and the Holdings Preferred Equity Interests, shall be, and shall be deemed to be, discharged and terminated, and all holders of Claims and the Laminates Equity Interests and the Holdings Preferred Equity Interests shall be precluded and enjoined from asserting against the Debtors, the Reorganized Debtors, or any of their assets or properties, any other or further Claim or Equity Interest based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of claim or proof of equity interest.

11.3.   *Discharge of Debtors.*

Upon the Effective Date and in consideration of the distributions to be made hereunder, except as otherwise expressly provided herein, each holder (as well as any trustees and agents on behalf of each holder) of a Claim or Equity Interest and any Affiliate of such holder shall be deemed to have forever waived, released, and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, rights, and liabilities that arose prior to the Effective Date.  Upon the Effective Date, all such persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated Equity Interest in the Debtors.

11.4.    ***Term of Injunctions or Stays***.

Unless otherwise provided, all injunctions or stays arising under or entered during the Reorganization Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

11.5.    ***Injunction Against Interference with the Plan of Reorganization***.

Upon the entry of a Confirmation Order with respect to the Plan of Reorganization and except as otherwise provided herein or in the Confirmation Order, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan of Reorganization, except with respect to actions any such entity may take in connection with the pursuit of appellate rights.

11.6.    ***Injunction Regarding Worthless Stock Deduction***.

Any  "50-percent shareholder" of the Debtors or Reorganized Debtors within the meaning of section 382(g)(4)((D) of the Internal Revenue Code of 1986, as amended, is permanently enjoined from claiming a worthless stock deduction with respect to its Equity Interest for any taxable year of such shareholder ending prior to the Effective Date.

11.7.    ***Release and Exculpation***.

Effective as of the Confirmation Date but subject to the occurrence of the Effective Date, and in consideration of: (a) the services provided by the present and former directors, officers, employees, Affiliates, agents, financial advisors, attorneys, and representatives of the Debtors to the Debtors who acted in such capacities after the Petition Date; (b) the services of the Creditors' Committee, the Steering Committee, the Senior Secured Lenders, the Prepetition Agent, the administrative agent and the lenders under the DIP Agreement, and their respective professionals in connection with the Reorganization Cases; and (c) the investment to be made by the Investors pursuant to the Plan of Reorganization, (x) the Debtors and the Reorganized Debtors; (y) each holder of a Claim or Equity Interest that votes to accept the Plan of Reorganization (or is deemed to accept the Plan of Reorganization); and (z) to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each holder of a Claim or Equity Interest that does not vote to accept the Plan of Reorganization shall release unconditionally and forever each present or former director, officer, employee, agent, financial advisor, attorney and representative of the Debtors who acted in such capacity after the Petition Date, the Creditors' Committee, each member of the Creditors' Committee, the Steering Committee, the Senior Secured Lenders, the Prepetition Agent, the Investors, the Buyer, the New Administrative Agent, the agent and the lenders under the DIP Agreement, and each of their respective members, officers, directors, agents, financial advisors, attorneys, employees, equity holders, parent corporations, subsidiaries, partners, Affiliates, and representatives from any and all causes of action whatsoever in connection with, related to, or arising out of the Reorganization Cases, the pursuit of confirmation of the Plan of Reorganization, the consummation thereof, the administration thereof, or the property to be distributed thereunder, and, with respect to the Senior Secured Lenders, the Prepetition Agent and the agent and the lenders under the DIP Agreement (and their respective members, officers, directors, agents, financial advisors, attorneys, employees, equity holders, parent corporations, subsidiaries, partners, Affiliates, and representatives), any act or omission related to the Debtors and any extensions of credit or other financial services or accommodations made or not made to the Debtors prior to the Effective Date; *provided*, that the foregoing shall not operate as a waiver of or release from any causes of action arising out of (i) any

express contractual obligation owing by the Buyer, or (ii) the willful misconduct or gross negligence of any such person.

11.8. ***Injunction Relating to Exculpation and Release***.

Pursuant to section 524 of the Bankruptcy Code, the discharge provided by Section 11.3 hereof, and section 1141 of the Bankruptcy Code shall act as an injunction against the commencement or continuation of any action or act to collect, offset or recover the Claims and Equity Interests discharged pursuant to the Plan of Reorganization, except as otherwise expressly provided herein or in the Confirmation Order. Furthermore, the Confirmation Order will contain an injunction permanently enjoining the commencement or prosecution by the Debtors, the Reorganized Debtors, and any other person, whether derivatively or otherwise, of any cause of action exculpated, released, or discharged pursuant to the Plan of Reorganization against the released and exculpated parties.

11.9. ***Avoidance Actions***.

Except with respect to Claims Allowed in the Plan of Reorganization, as of the Effective Date, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, the Debtors retain the right to prosecute any avoidance or recovery actions under sections 510, 542 through 551, and 553 of the Bankruptcy Code that belong to the Debtors or debtors in possession; *provided*, that the Debtors and the Creditors' Committee shall be deemed to have waived any such avoidance or recovery actions against the Senior Secured Lenders. To the extent that the avoidance action results in a Class D Allowed Claim, regardless of the actual amount distributed to holders of Class D Allowed Claims, the Debtors shall credit 20% of such Allowed Claim against the recovery to be received in connection with such avoidance action, in full satisfaction of such claim any such claimant might otherwise hold in connection with a judgment or settlement of the avoidance action.

## SECTION 12. RETENTION OF JURISDICTION

12.1. ***Jurisdiction of the Bankruptcy Court***.

On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the Reorganization Cases for, among other things, the following purposes:

(a) To hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom;

(b) To determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on the Confirmation Date;

(c) To ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(d) To consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim or Equity Interest;

(e) To hear and determine all actions commenced by the Debtors pursuant to sections 505, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code, collection matters related thereto, and settlements thereof;

(f)     To hear and determine any disputes or issues arising under any settlements of Claims approved by the Bankruptcy Court;

(g)     To enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(h)     To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any person with the consummation, implementation, or enforcement of the Plan of Reorganization, the Confirmation Order, or any other order of the Bankruptcy Court;

(i)     To hear and determine any application to modify the Plan of Reorganization in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan of Reorganization, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(j)     To hear and determine all applications of retained professionals under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Confirmation Date, and to hear any disputes regarding the expenses of the Reconstituted Committee;

(k)     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan of Reorganization, the Confirmation Order, any transactions or payments contemplated hereby or any agreement, instrument, or other document governing or relating to any of the foregoing, but expressly excluding disputes relating to documents evidencing the Exit Facilities, the New Common Stock, the GUC Notes, the Junior Notes, or any post-Effective Date issue of corporate governance;

(l)     To take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan of Reorganization or to maintain the integrity of the Plan of Reorganization following consummation;

(m)     To determine such other matters and for such other purposes as may be provided in the Confirmation Order, and any other order, judgment, injunction, or ruling entered or made in the Reorganization Cases;

(n)     To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including but not limited to, an expedited determination under section 505(b) of the Bankruptcy Code of the tax liability of the Debtors or the Disputed Unsecured Claims Reserve for all applicable taxable periods);

(o)     To determine any Claim of, or any liability to, a governmental unit that may be asserted as a result of the transactions contemplated herein;

(p)     To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(q)     To recover all assets of the Debtors and property of the Debtors' estates, wherever located;

(r)     To resolve any Disputed Claims;

(s)     To determine the scope of any discharge of any Debtor under the Plan of Reorganization or the Bankruptcy Code; and

(t)     To enter a final decree closing the Reorganization Cases.

## SECTION 13.  MISCELLANEOUS PROVISIONS

### 13.1.  *Payment of Statutory Fees*.

On the Effective Date, and thereafter as may be required, the Reorganized Debtors shall pay all fees payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

### 13.2.  *Retiree Benefits*.

On and after the Effective Date, pursuant to section 1129(a)(13) of the Bankruptcy Code, the Reorganized Debtors shall continue to pay all retiree benefits of the Debtors (within the meaning of section 1114 of the Bankruptcy Code), at the level established in accordance with section 1114 of the Bankruptcy Code, at any time prior to the Confirmation Date, for the duration of the period for which the Debtors have obligated themselves to provide such benefits.

### 13.3.  *Reconstitution of Creditors' Committee*.

On the Effective Date, the Creditors' Committee shall be dissolved and its members deemed to be released of all duties and responsibilities in connection with the Reorganization Cases or the Plan of Reorganization and its implementation, and the post-Effective Date committee shall be organized, consisting of one member, who shall serve without compensation and shall be based as close as possible to New York, New York as is reasonably practicable (the "Reconstituted Committee").  The name of the initial member of the Reconstituted Committee shall be designated and disclosed by the Creditors' Committee on or before the date of the Confirmation Hearing.  The Reconstituted Committee shall be permitted to monitor and consult with the Reorganized Debtors regarding any Disputed General Unsecured Claims and object to, or seek the estimation of, Claims in accordance with Section 7.1 hereof.  The Reconstituted Committee will terminate at such time when the aggregate amount of Disputed General Unsecured Claims is less than 10% of the aggregate Disputed General Unsecured Claims as of the Effective Date.  The Reconstituted Committee shall be authorized to retain one local counsel, the reasonable fees and expenses of which shall be borne by the Reorganized Debtors (inclusive of the reasonable expenses of the member of the Reconstituted Committee).  In the event of any dispute regarding the expenses of the Reconstituted Committee or the fees and expenses of its counsel, the amount of any such fees and expenses shall be determined by the Bankruptcy Court.

### 13.4.  *Recognition of Guaranty Rights*.

The classification of and manner of satisfying all Claims and Equity Interests under the Plan of Reorganization takes into consideration (a) the existence of guaranties by the Debtors and (b) the fact that the Debtors may be joint obligors with each other or other entities, with respect to an obligation.  All Claims against any of the Debtors based upon any such guaranties or joint obligations shall be discharged in the manner provided in the Plan of Reorganization.

13.5.    *Certain Indenture Trustee Fees and Expenses*.

The reasonable fees and expenses of the Indenture Trustee incurred through the Effective Date, including the reasonable fees and expenses of its professionals, will be paid out of that portion of the GUC Cash distributable to holders of the Senior Subordinated Notes Claims, in accordance with the Indenture Trustee's lien under Section 7.07 of the Indenture, without the need for any such parties or professionals to file an application for allowance with the Bankruptcy Court.  Upon payment of the reasonable fees and expenses of the Indenture Trustee and its professionals in full, the Indenture Trustee will be deemed to have released all of its lien and priority rights for its fees and expenses under the Indenture of the Senior Subordinated Notes.  Any disputes regarding the payment of fees and expenses under this Section shall be submitted to the Bankruptcy Court for resolution.

13.6.    *Substantial Consummation*.

On the Effective Date, the Plan of Reorganization shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

13.7.    *Amendments*.

(a)    *Plan of Reorganization Modifications*.  The Plan of Reorganization may be amended, modified, or supplemented by the Debtors in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as the Bankruptcy Court may otherwise direct; *provided*, that any such amendment, modification, or supplement is not inconsistent with, or prohibited by, the Acquisition Agreement; and *provided, further*, that if such amendment, modification, or supplement adversely affects the Investors, or the constituencies of the Creditors' Committee or the Steering Committee, the prior consent of such adversely affected party or its representative committee shall be required with respect thereto (and such consent shall not be unreasonably withheld or delayed).  In addition, after the Confirmation Date, so long as such action does not materially adversely affect the treatment of holders of Claims or Equity Interests under the Plan of Reorganization, the Debtors may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan of Reorganization or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes and effects of the Plan of Reorganization.

(b)    *Other Amendments*.  Prior to the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan of Reorganization without further order or approval of the Bankruptcy Court, *provided*, that such technical adjustments and modifications do not materially adversely affect the treatment of holders of Claims or Equity Interests and *provided, further*, that if such technical adjustments or modifications adversely affect the Investors or the constituencies of the Creditors' Committee or the Steering Committee, the prior consent of the adversely affected party or its representative committee shall be required with respect thereto (and such consent shall not be unreasonably withheld or delayed).

13.8.    *Sections 1125 and 1126 of the Bankruptcy Code*.

As of and subject to the occurrence of the Confirmation Date: (a) the Debtors shall be deemed to have solicited acceptances of the Plan of Reorganization in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, section 1125(a) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation; and (b) the Debtors, the members of the Creditors' Committee, and each of their respective Affiliates, agents, directors, officers, employees, advisors, and

attorneys) shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan of Reorganization, and therefore are not, and on account of such offer, issuance, and solicitation will not be, liable at any time for any violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan of Reorganization or the offer and issuance of any securities under the Plan of Reorganization.

### 13.9. *Cramdown*.

In the event a Class votes against the Plan of Reorganization and the Plan of Reorganization is not withdrawn or revoked, the Debtors reserve the right to effect a "cram down" of the Plan of Reorganization as to such Class pursuant to section 1129(b) of the Bankruptcy Code. Further, to the extent necessary, the terms of the Plan or Reorganization may be modified by the Debtors, subject to Section 13.7 hereof, to reallocate value from all Classes at and below the level of the objecting Class to all impaired senior Classes until such impaired senior Classes are paid in accordance with the absolute priority rule of section 1129(b) of the Bankruptcy Code. The Debtors may make such modifications or amendments to the Plan of Reorganization, subject to Section 13.7 hereof, and such modifications and amendments shall be filed with the Bankruptcy Court and served on all parties in interest entitled to receive notice of such modifications or amendments pursuant to the Bankruptcy Rules. To the extent any Class is deemed to reject the Plan or Reorganization by virtue of the treatment provided to such Class, the Plan of Reorganization shall be "crammed down" on the claimants within such Class pursuant to section 1129(b) of the Bankruptcy Code.

### 13.10. *Expedited Determination of Taxes*.

The Reorganized Debtors may request an expedited determination of taxes of the Reorganized Debtors under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Reorganized Debtors for all taxable periods through the Effective Date.

### 13.11. *Waiver of Bankruptcy Rules 3020(e) and 7062*.

The Debtors may request that the Confirmation Order include (a) a finding that Bankruptcy Rules 3020(e) and 7062 shall not apply to the Confirmation Order; and (b) authorization for the Debtors to consummate the Plan of Reorganization immediately after entry of the Confirmation Order.

### 13.12. *Severability*.

If, prior to the entry of the Confirmation Order, any term or provision of the Plan of Reorganization is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors (and with respect to a term or provision of the Plan of Reorganization that adversely affects the Investors or the constituencies of the Creditors' Committee or the Steering Committee, upon prior written consent of such adversely affected party or its representative committee, which consent will not be unreasonably withheld or delayed), shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan of Reorganization will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that

each term and provision of the Plan of Reorganization, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 13.13. *Revocation or Withdrawal of the Plan*.

The Debtors reserve the right to revoke or withdraw the Plan of Reorganization prior the Confirmation Date.  If the Debtors revoke or withdraw the Plan of Reorganization prior to the Confirmation Date, then the Plan of Reorganization shall be deemed null and void.  In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against the Debtors or any other person, or an admission against interests of the Debtors, nor shall it prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors.

### 13.14. *Governing Law*.

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an Exhibit hereto provides otherwise, the rights, duties, and obligations arising under the Plan of Reorganization shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

### 13.15. *Time*.

In computing any period of time prescribed or allowed by the Plan of Reorganization, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

### 13.16. *Notices*.

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

Formica Corporation
15 Independence Boulevard
Warren, New Jersey 07059
Attn:  Earl Bennett, Esq.
General Counsel
Telephone:  (908) 647-8700
Telecopier:  (908) 647-8944

- and -

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York  10153
Attn:  Alan B. Miller, Esq. and Stephen Karotkin , Esq.
Telephone:  (212) 310-8000
Telecopier:  (212) 310-8007

- and -

Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, New York  10038
Attn:  Michael J. Sage, Esq. and Gerald C. Bender, Esq.
Telephone:  (212) 806-5400
Telecopier:  (212) 806-6006

- and -

Kaye Scholer, LLP
425 Park Avenue
New York, New York  10022
Attn:  Michael Solow, Esq. and Benjamin Mintz, Esq.
Telephone:  (212) 836-8000
Telecopier:  (212) 836-6350

- and -

Schulte Roth & Zabel LLP
919 Third Avenue
New York, New York 10022
Attn:  Jeffrey S. Sabin, Esq. and Andre Weiss, Esq.
Telephone:  (212) 756-2000
Telecopier:  (212) 593-5955

- and-

O'Melveny & Myers, LLP
400 South Hope Street
Los Angeles, California  90071
Attn:  C. James Levin, Esq.
Telephone:  (213) 430-6000
Telecopier:  (213) 430-6407

- and -

O'Melveny & Myers, LLP
30 Rockefeller Plaza
New York, New York  10112
Attn:  Howard A. Blaustein, Esq.
Telephone:  (212) 408-2400
Telecopier:  (212) 408-2420

- and -

Buchalter, Nemer, Fields & Younger
601 South Figueroa Street, 24th Floor
Los Angeles, California  90017-5704
Attn:  Robert C. Colton, Esq.
Telephone:  (213) 891-0700
Facsimile:  (213) 896-0400

13.17. ***Exemption from Transfer Taxes***.

Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan of Reorganization, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan of Reorganization, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

13.18. ***Binding Effect***.

The Plan of Reorganization shall be binding upon and inure to the benefit of the Debtors, the holders of Claims and Equity Interests, and their respective successors and assigns, including without limitation, the Reorganized Debtors.

Dated:  New York, New York
          November 17, 2003

Respectfully submitted,

FORMICA CORPORATION
(for itself and on behalf of each of Debtors)

By:      /s/ Edward R. Case
Name:  Edward R. Case
Title:   Chief Financial Officer
          and Executive Vice President

and

By:      /s/ Earl M. Bennett
Name:  Earl M. Bennett
Title:   General Counsel, Senior Vice President, and
          Secretary

COUNSEL:

/s/ Alan B. Miller
_____

Alan B. Miller
Stephen Karotkin
Weil, Gotshal & Manges LLP
Attorneys for the Debtors
  and Debtors in Possession
767 Fifth Avenue
New York, New York  10153
(212) 310-8000